## PHILLIPS *v.* THE STATE.

1. The defendant's plea of not guilty put in issue every material allegation in the bill of indictment charging him with the offense of murder; and it not appearing that the defendant either contended or admitted that the homicide charged was a crime, and there being facts in evidence from which the jury would have been authorized to find that the killing of the deceased was not a criminal act, it was error for the court to charge the jury as follows: "His [referring to defendant] contention is that he was not present at the time of the homicide, and that he did not kill the deceased. His contention is, it was physically impossible for him to have committed the crime, as he was absent from the scene of the crime."

2. No error, except that pointed out in the foregoing headnote, is made to appear in any of the other portions of the charge excepted to, nor in any of the rulings of the court.

Argued May 18,—Decided August 19, 1908.

Indictment for murder. Before Judge Lewis. Jasper superior court. April 20, 1908.

*Greene F. Johnson,* for plaintiff in error. *John C. Hart, attorney-general,* and *Joseph E. Pottle, solicitor-general,* contra.

BECK, J. The accused was tried for murder, convicted, and sentenced to life imprisonment. The homicide occurred at a gathering of negroes, and was committed without apparent motive, according to the evidence for the State, though there is some evidence of a previous quarrel. In the midst of the dance several negroes began shooting, and the accused was seen to shoot at short range at the deceased, who ran out of the house, his clothing on fire from the discharge of the pistol. Before he died the next morning, he stated several times that he was shot by the accused. The accused endeavored to set up an alibi, witnesses testifying that he was not in the house when the shooting occurred. He excepts to the court's refusal to grant him a new trial.

The motion for a new trial contains several grounds, but it is unnecessary to state them in detail, as we place the reversal of the judgment upon the assignment of error contained in the fifth ground of the motion; and no reversible error is made to appear in the exceptions to other rulings of the court, nor in other exceptions to his instructions given to the jury. The fifth ground of the motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'His [referring to the defendant] contention is that he was not present at the time of the homicide,

and that he did not kill the deceased. His contention is, it was physically impossible for him to have committed the crime, as he was absent from the scene of the crime.' Said charge being erroneous for the reason that it did not correctly state the contention of the defendant; and misstated said contention by then and there assuming in said instruction that the defendant admitted that a homicide had been committed, and that the same was a crime; when neither in his statement to the jury nor at any other time during the progress of the trial did the defendant make such an admission; but on the other hand by his plea of not guilty put in issue every material fact necessary to be proved by the State in order to show that the defendant was guilty of the murder of the deceased. One of these facts was that when the deceased died a homicide had been committed, and another of these facts was that such homicide constituted a crime under the laws of the State of Georgia. The defendant admitted neither fact; and it was error for the court to thus misstate the defendant's contention, by assuming that the defendant admitted facts which he had put in issue and of which he professed the utmost ignorance."

This charge was erroneous in that it assumes that the defendant admits or contends that the killing of the deceased was a crime. By his plea to the indictment the defendant put in issue every material allegation in the indictment. It put in issue both the fact of the killing of the deceased, and also the charge that such killing was an offense against the laws of the State. While the evidence introduced both by the State and the defendant showed that the homicide had been committed, some of the evidence introduced was of such a character as to leave open the question for determination by the jury whether the killing was in fact a crime. One Walker, who was sworn as a witness for the defendant, testified that he was in the house at the time of the shooting which resulted in the death of the person alleged to have been killed. This witness described the shooting and the circumstances thereof. He stated that at the time of the shooting there was "a crowd in the house. Right in front of the fireplace stood Tom Thompson, Will Benton, Sam Barber [the deceased], and Charlie Benton. Benton and Barber were killed. Tom Thompson fired the first shot, and I walked up to him and said, 'Tom, put that pistol up,'

and patted him on the shoulder, and when I did that he fired his pistol right straight up through the top of the house. Thompson fired first. Charlie and Sam [the deceased] and Tom and Will went to shooting. They commenced shooting all around. It looked to me like the whole house was shooting. I backed up against the side of the house and stood there until the thing was over. There were about fifteen holes in the house that I could see. . . I did not see Sam when he was shot. There was so much smoke I lost sight of all the shooting." Taking this evidence as true, the jury would have been authorized to find that, without other provocation than the fact that some one in the room had fired a shot straight up in the roof of the house, the deceased began shooting "all around him." Now if the defendant was one of the persons who' was around him and was apparently in danger of being shot by the deceased, we could not say, as a matter of law, that he would have been guilty of a felonious shooting if he had, in the face of such apparent danger, shot and killed the deceased. Or, if the defendant himself was not present in the circle of those who were around Sam Barber when he began shooting, if some one else in the crowd of those surrounding Barber at the time he began his fusillade fired upon Barber and killed him in order to put an end to his mad conduct, which apparently put in jeopardy the life of every person in the room, it could not be said that such a killing was a crime. Hence it was error for the court to assume, in the charge to the jury, that a crime had been committed; that question should have been left to the jury. Of course the jury would have had the right to disbelieve the witness Walker, and to believe the testimony introduced by the State, which tended to show that the killing was wanton and unprovoked murder. But they should have been allowed to pass upon that question without being influenced one way or the other by any expression upon the part of the court in his instructions to them, which contained an intimation that the killing was a crime.

The use of the word "homicide," in the extract from the charge quoted, was not error, the defendant having introduced evidence showing that some one had shot the deceased; and the judge certifies that there was no contention that there was not a homicide. *Jones* v. *State,* 130 *Ga.* 274 (60 S. E. 840). Still we think it would be better in such cases, so long as the defendant does not

admit that a homicide had, as a matter of fact, been committed, for the court to submit that question together with all the other questions of fact to the jury for their determination.

*Judgment reversed. All the Justices concur.*