## ALEXANDER *v.* THE STATE.

1. The evidence supports the verdict.
2. Error is assigned on the following charge of the court: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free a person killing from the guilt and crime of murder. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and be punished as murder." It is insisted that "the encounter was a continuous fight. No time elapsed from the beginning of the fight until the homicide where the voice of reason could have intervened. . . The voice of reason and humanity could not be heard, and no attribute of deliberation and revenge entered into the mind of movant." Also, that the "charge was in fact and in effect an intimation of an opinion by the court that time for reason did exist, and that there was a sufficient time for the voice of reason and humanity to be heard." The charge of which complaint is made is in the terms of the Penal Code (1910), § 65. It is not subject to the criticism that it is an intimation of opinion by the court, and was not error for any reason assigned.
3. Movant complains of the following charge to the jury: "In other words, gentlemen, voluntary manslaughter is the intentional killing of a human being or the killing of a human being by the intentional use of a weapon that in the manner it is used at the time is likely to kill, but a killing under circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied." The criticism is that "voluntary manslaughter" is not the intentional killing of a human being, and that therefore the charge is incorrect and misled the jury. There is no merit in this ground of the motion. To constitute voluntary manslaughter the

49

killing must be intentional. *Dowdy* v. *State*, 96 *Ga.* 653 (2) (23 S. E. 827); see *Curry* v. *State*, 150 *Ga.* 736 (105 S. E. 361); *Vincent* v. *State*, 153 *Ga.* 278, 295 (112 S. E. 120).

4. Movant complains of the following instruction to the jury: "Gentlemen, it becomes necessary for the court to instruct the jury as to the circumstances and manner under which legal arrests may be made. An arrest may be made for a crime by an officer, either under warrant, or without a warrant if the offense is committed in his presence or the offender is endeavoring to escape or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." The criticism is that this charge is incorrect and misleading. In this connection movant inserts under quotations the principle which he contends is the law. The instruction of which complaint is made is in the language of the Penal Code (1910), § 917, and is not erroneous. The principle which movant insists should have been given in charge is hereinafter dealt with in the sixth paragraph.

5. Movant complains that the court instructed the jury as follows: "If an officer undertake to make an arrest and in his efforts to arrest a party uses such force only as may be reasonably necessary to successfully arrest the party, and such party resist and kill the officer when such officer is using only such force as may be reasonably necessary to make a successful arrest of the party, then the killing of such officer under such circumstances by a party sought to be arrested by such officer—legally arrested by such officer—would be murder." The criticism is that this charge was unauthorized by the evidence, that movant had committed no crime in the presence of the officer, that the officer had no warrant, and that there was no likelihood of a miscarriage of justice on account of the non arrest of the movant; that the charge was misleading to the jury; and further that the charge "did not state hypothetically the question at issue." The charge is not error for any reason assigned. It stated a correct principle of law applicable to the evidence in the case. *Brooks* v. *State*, 114 *Ga.* 6 (39 S. E. 877); *Graham* v. *State*, 146 *Ga.* 18 (90 S. E. 473).

6. Movant contends that the court erred in refusing to give in charge the following, though duly requested in writing: "An officer, nor any other person has any right to arrest a citizen unless, first, he has a warrant for that person, second, unless a crime is being committed in his presence, and third, unless there is liable to be a miscarriage of justice unless the person is arrested to prevent his escape after the commission of a crime." The principles of law, in so far as they are correct, were covered by the general charge of the court.

7. One ground of the motion is as follows: "Upon the trial of said case the following motion was made by movant's attorney, to rule out certain evidence which movant contended was illegally admitted in evidence by the court, said motion being in the following language, to wit: 'I want to move to rule out all evidence that this man (meaning the deceased) was an officer or had any right to make an arrest, or that he was clothed with any of the authority of a policeman, on the grounds that he had no warrant for Mat Alexander, that no crime was committed in his presence, and that there wasn't any

chance of a miscarriage of justice on account of his escape for any crime that had been committed by him.' This motion had reference to certain witnesses testifying that deceased was an officer. It had reference to certain municipal ordinances that the police of Atlanta had authority on account of which to make arrests, it nowhere appearing in the evidence that the deceased was an officer on duty, or that any crime had been committed in his presence, or that any municipal ordinance had been violated by movant; and movant insists that the admission of said evidence was damaging to him, and that none of the facts in the case would authorize the admission of said evidence, and that the evidence ·was greatly harmful to movant, and was unauthorized by the facts shown in evidence in this case; and the court erred in not sustaining said motion and in not rejecting and ruling out the evidence referred to in said motion." This ground of the motion is incomplete and does not show error. The evidence is not set out in substance or otherwise in this ground of the motion. *Perdue* v. *Young*, 154 *Ga.* 220 (2) (113 S. E. 801); *Durham* v. *Durham*, 156 *Ga.* 454 (3) (119 S. E. 702).

8. The remaining grounds of the amended motion are mere elaborations of the general ground complaining that the verdict is not authorized by the evidence and that at most the evidence would authorize a verdict of voluntary manslaughter. As already stated, the verdict finding the defendant guilty of murder was authorized by the evidence.

·                    No. 4859.  AUGUST 12, 1925.

Murder.  Before Judge Humphries. ˙ Fulton superior court. March 30, 1925.

*T. J. Ripley* and *W. M. Bailey,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, E. A. Stephens* and *J. C. Shelor,* contra.

GILBERT, J.  Mat Alexander was convicted of the offense of murder, and was sentenced to life imprisonment in the penitentiary.  He moved for a new trial on the general grounds, and subsequently amended the motion.  The motion having been overruled, he excepted.

1.· With reference to the general grounds the movant insists that the evidence at most warranted a verdict finding the defendant guilty of voluntary manslaughter.  Evidence was introduced by the State tending to show, and which authorized the jury to find, as follows:  On December 13, 1924, Jones P. Aiken was a policeman of the city of Atlanta.  He resided in the immediate vicinity of Lovejoy,· Powers, and Simpson Streets within the City of Atlanta. · Somewhere about the hour of nine o'clock p. m., while he was at his home on Powers Street with his wife, some

one knocked on his door and requested that he go to quell a disturbance near by. The officer repaired to the scene, where several persons were assembled, among whom were the defendant, Mat Alexander, and his wife. The defendant and his wife had engaged in a fight, using bricks and a stick, and there was also much loud talking and cursing, causing a disturbance in the neighborhood. Several of the residents of the neighborhood were on the street; and when the officer appeared, finding the combatants with bricks still in their hands, he showed Mat Alexander his badge and told him he was under arrest. The defendant replied: "You are not going to take me down," and also, "You can shoot me, but I am not going to go down." The police officer replied, "I am not going to shoot you, but you are going down." The expression "going down" clearly meant going to the police station. The defendant, being apprised that the policeman was intent upon arresting him, from the first showed anger and a disposition to defy arrest. The officer took hold of the defendant and undertook to carry him along the street; whereupon the accused took hold of a fence and pulled off a paling. The officer undertook to deputize assistance, but no one responded. He then requested a bystander to go to the nearest telephone for the purpose of calling for the police patrol. Thereupon a struggle or scuffle ensued between the policeman and the defendant; they grappled and fell to the ground. The pistol fired two or three times; the accused arose from the ground leaving the policeman underneath him in a stooping or rising position. Having secured the policeman's pistol the accused stood over him, pointing the pistol directly at him and said, "You damned son of a bitch, I am going to send you to hell," or, as another witness testified "You white son of a bitch, I will send you to hell," and fired the shot from which the policeman died within a few minutes.

The evidence is conflicting as to the manner in which the policeman approached the accused for the purpose of making the arrest. According to the testimony for the defendant, the policeman used unnecessary force and violence, which would have authorized the jury to reduce the offense to voluntary manslaughter. According to the defendant's statement, however, he did not shoot the policeman at all, but on the contrary the deceased was killed during the struggle by the discharge of the pistol while in

the policeman's hand.  The statement of the accused as to how the killing occurred is as follows:  "On the 13th day of December, Saturday night, me and Mr. Adams [Aiken] had a little row —me and my wife had a little row, and Mr. Adams [Aiken] run up to us, after I was leaving home, with his pistol in his hand; he had on an undershirt—didn't have on any top shirt, no uniform of any kind—he run up to me, grabbed me in my shirt and say, 'You black son of a bitch, you raised enough hell down here,' and struck me across the head on the right hand side of my head.  I say, 'Lord, have mercy, I haven't done nothing;' and he struck me again right here, with the pistol [indicating].  I say, 'I ain't done nothing;' he shoved me with the side of the pistol.  'Shut up, you black·son of a bitch, I'm going to kill you.'  I caught hold of Mr. Adams' [Aiken's] pistol and we began tussling over the pistol.  We fell on the sidewalk, and after we fell on the sidewalk the pistol went off three times.  The first time it went off it shot me through the hand, and the next time it went off I couldn't say where that bullet went, but the next time it went off striking Mr. Adams [Aiken] through the neck, but somewhere about the neck—they say somewhere about the jugular vein.  Gentlemen of the jury, I'm not guilty of shooting Mr. Adams [Aiken] ; he shot himself in the scuffle on the ground.  I wouldn't have nothing like that occur for nothing on earth."  There was direct evidence that Aiken, the deceased, was a policeman of the City of Atlanta, consisting of the testimony of the chairman of the police commission that he swore him in, and also the oath as a police officer signed by Aiken, and by the vice-president of the police committee of the council.  The State also introduced the following ordinances of the city: "Sec. 1762.—Public Indecency.  Disorderly Conduct—How Punished— Penalty.  Any person, who shall, within the corporate limits of Atlanta, be guilty of an act of public indecency, tending to debauch the morals of any of the citizens, or of quarrelling, or of using obscene, vulgar, profane language, or malicious mischief, or otherwise acting in a disorderly manner (which offense is not recognized as penal by the laws of this State), shall on conviction pay a fine of not exceeding one hundred dollars and costs, or be imprisoned in the station-house not more than thirty days, in the discretion of the recorder's court."  "Sec. 409.—Duties of

Police Force. It shall be their duty to make arrests of any persons violating the ordinances of said city with or without summons, and also with or without warrant. They shall likewise make arrests of any persons, who have violated the statutes of said State, and their arrests for such violations are hereby authorized, either with or without warrants therefor. They shall perform such other duties as may be imposed by the laws of the State, and ordinances of the general council." The testimony on behalf of the State clearly authorized the verdict; and the credibility of the witnesses was a matter for the jury to determine.

*Judgment affirmed.    All the Justices concur.*