## HOWELL *v.* THE STATE.

1. The court charged the jury as follows: "This case is here before you regularly to be tried, every necessary step having been taken in this court to give you jurisdiction to try and determine this issue." Error is assigned upon this charge, upon the ground that "said charge was not authorized by the evidence, there being no proof whatever on which

Arrest, 5 C. J. p. 398, n. 68; p. 416, n. 89, 90.

Criminal Law, 16 C. J. p. 528, n. 31 New; p. 581, n. 15 New; p. 611, n. 67; p. 832, n. 83; p. 833, n. 88; p. 882, n. 9; p. 924, n. 29; p. 992, n. 9; p. 1043, n. 32, 35; p. 1050, n. 84; p. 1180, n. 74; 17 C. J. p. 53, n. 80 New.

Homicide, 29 C. J. p. 1144, n. 84; p. 1145, n. 93; 30 C. J. p. 37, n. 25 New; p. 77, n. 43; p. 78, n. 53; p. 191, n. 10; p. 310, n. 25; p. 366, n. 4.

Officers, 29 Cyc. p. 1386, n. 20 New; p. 1415, n. 69 New.

to base the same. There is nothing in the evidence to show that the superior court of Houston County had jurisdiction to try this case growing out of a homicide committed in Bibb County." There is no merit in this assignment; for, after the indictment for murder was returned, there was a petition filed by the accused for a change of venue, which was granted, and the clerk of the court in which the indictment was pending, in accordance with the terms of the statute, transmitted a certified copy of the order and the other papers in the case to the county in which the trial was to take place; after these papers were filed in the office of the clerk of the superior court in the county to which the case was removed, the order changing the venue became a part of the record in the case; and the court in charging the jury was authorized to state to them as a matter of law that the case was properly in that court for trial. Penal Code (1910), § 965.

(a) Jurisdiction, in the facts of this case, is a question for determination by the court, and not the jury; and the failure on the part of the State to introduce in evidence before the jury a certified copy of the petition and order for change of venue is not a good ground of objection made in this court for the first time.

(b) The superior court trying the case will take judicial cognizance of what has transpired in the superior court of the county where the change of venue was ordered, there being a certified copy of such proceedings in the court of the county to which the case has been transferred, and being considered by the same judge who ordered the change. It was not error for the court to consider such record.

2. It was not error for the court to allow a witness for the State to testify that the deceased "had been with the sheriff's office in Bibb County about ten days before his death. He went there about the 5th or 6th of May, and had been serving regularly during that time as far as I know," over objection on the ground that if the deceased was a deputy sheriff there was higher and better evidence of the fact than the oral statement of the witness, which was a mere conclusion, etc.

3. It was not error, under the facts of this case, for the court to charge the jury that if the deceased was an officer and undertook to arrest the defendant, he had the right to arrest him if at the time he knew whisky was in his possession, or he was transporting liquor, "provided you think beyond a reasonable doubt that Green [the deceased] was a duly authorized officer for the purpose of making the arrest; and if he shot him for that reason to prevent him from arresting him, and that was the only reason, then he would be guilty of murder, if that was the only motive." Proof that a person acts as a public officer is prima facie sufficient to show that he is such officer. Even if the officer has not taken the prescribed oath, his official acts are legal.

4. Evidence of threats made by a defendant against a class of persons to which the deceased belonged at the time of the homicide is admissible. Evidence that is material and relevant, offered by the State in the prosecution of one for a violation of the criminal law, is admissible even though it may tend incidentally to put the defendant's character in issue.

5. It was not an expression of opinion by the court, under the facts of

this case, where counsel for plaintiff in error, during the progress of the case, moved to rule out the evidence of a certain witness on the ground that "he has given only an opinion," for the court to say "he is giving facts." Much of the evidence is not opinion evidence, but is a statement of facts; and where an opinion is expressed by the witness the facts are given on which the opinion is based.

(*a*) A judge may not express his opinion to the jury; but if, in the decision of any legal question as it arises, he must pass upon the facts, the rule does not aplpy.

(*b*) It is not error to overrule a motion to rule out all the evidence of a witness en bloc, where it appears that some of it is admissible.

6. The charge of the court set out in division 5 of the opinion is not erroneous, as against the defendant, for any reason assigned.

(*a*) "The mere fact of an unlawful arrest will not alone authorize the killing of an officer making it. But if, in the progress of the transaction, the officer is about to commit a felony upon the other party, or so acts and makes such show of violence as to excite in the person sought to be arrested the fears of a reasonable man that a felony is about to be committed on him, and such person acts under the influence of those fears and not in a spirit of revenge, he may protect himself, although it may be necessary to slay the officer for that purpose."

(*b*) If the motive of one shooting and killing another is solely to prevent an illegal arrest, he would be guilty of manslaughter; but if such an one shoots and kills another at a time when there is no actual or apparent necessity to do so, either to save his own life or to prevent a felonious assault from being committed upon him, he would be guilty of murder.

(*c*) An officer in this State may arrest one for a crime committed in his presence, without a warrant. A crime is committed in the presence of an officer, if he sees it committed, or by the exercise of any of his senses he has knowledge, together with what he sees, that a crime is being committed by the person sought to be arrested.

7. The judge charged the jury that "a reasonable doubt is a doubt that is reasonable, growing out of the consideration of the evidence in the case." The criticism of this charge is that the judge charged in effect that a reasonable doubt is a doubt growing out of the consideration of the evidence alone, etc. Immediately following the above charge on the subject of reasonable doubt the court also instructed the jury on the defendant's statement, and informed the jury that they might believe this statement in preference to the sworn evidence in the case. In view of the entire charge, the criticism on the charge with respect to reasonable doubt is without merit. *Phillips* v. *State*, 149 *Ga.* 255 (5) (99 S. E. 874). See *Wall* v. *State*, 153 *Ga.* 309 (6) (112 S. E. 142); *Giles* v. *State*, 6 *Ga.* 276 (6).

8. Other grounds of the motion for new trial, not specifically dealt with, are without merit.

9. The evidence was sufficient to authorize the verdict, and the court did not err in refusing a new trial.

No. 5152. MARCH 10, 1926. REHEARING DENIED JUNE 28, 1926.

Murder. Before Judge Mathews. Houston superior court. September 30, 1925.

*W. A. McClellan, T. A. Jacobs Jr., Duncan & Nunn, Hugh Howell,* and *Mark Bolding,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HILL, J. John Howell was indicted by the grand jury of Bibb County at the April term, 1925, of Bibb superior court, charged with the offense of murder by shooting Harry Green with a pistol, causing his death. Shortly after the indictment was returned the defendant filed a petition to Judge H. A. Mathews, presiding in Bibb superior court, under § 964 of the Penal Code of 1910, asking for a change of venue, and alleging that because of popular prejudice it would be impossible for him to secure a fair and impartial trial in Bibb County, and that there was grave danger of his suffering from mob violence if brought to trial in Bibb County, and particularly if he should be acquitted. After a hearing on this petition Judge Mathews granted an order changing the venue from Bibb to Houston County, and providing for the transmission of the papers, etc., and for the delivery of the prisoner to the new jurisdiction. A special term of Houston superior court was called for the purpose of trying the defendant, and he was put upon trial in Houston superior court, was found guilty by the jury without a recommendation, and was sentenced by the court to suffer the penalty of death by electrocution, as provided by law. A motion for new trial was filed by the defendant, which was overruled, and he excepted.

1. On the call of the case in this court the defendant in error suggested a diminution of the record, and filed a motion in this court asking that the clerk of Houston superior court be required to certify and send up as a part of the record in the case certain additional proceedings, and alleged substantially the following facts: that the brief of the evidence in this case shows that the homicide was committed in Bibb County, Georgia; that the indictment in the case, a copy of which is in the record now before the court, shows that it was returned by the grand jury of Bibb County; that there is of record in the office of the clerk of Houston superior court a petition for change of venue, filed by the plaintiff in error in Bibb superior court, in which the plaintiff in error, under the Penal Code of 1910, § 964, prayed for a change of venue

for the reasons set out above; that there is also of record in the clerk's office of Houston superior court an order of Hon. H. A. Mathews, judge of the superior courts of the Macon Circuit, presiding in Bibb superior court, granting this petition for change of venue and ordering that the venue be changed to Houston superior court, and that the clerk of Bibb superior court transmit all of the papers to the clerk of Houston superior court under his certificate and seal, and ordering the sheriff of Houston County to perform the various duties devolving upon him by virtue of this change of venue; that in paragraph 17 of the amended motion for new trial in this case the plaintiff in error complains of the following charge of the court: "This case is here before you regularly to be tried, every necessary step having been taken in this court to give you jurisdiction to try and determine this issue;" that in his original bill of exceptions in this case plaintiff in error fails to specify the petition for the change of venue and the order of court thereon, as material parts of the record for consideration by this court, and in consequence of this omission this petition and order are not now before this court; that the omitted parts of the record herein referred to will show that the change of venue was in every respect regularly granted at the instance of the plaintiff in error himself, and for his benefit; and that there is nothing in the record of which complaint could be made, and that he is estopped from making any complaint even if there were grounds therefor.

The plaintiff in error filed objections to the petition, the substance of which is set out above, on the following grounds: that the proceedings enumerated in the petition of defendant in error are not a part of the record of the case now pending in this court; that the petition for change of venue was filed in Bibb superior court, to which an answer was filed by the State of Georgia through Charles H. Garrett, solicitor-general; that these pleadings made a separate and distinct issue of fact to be heard and determined by the judge of the superior court of Bibb County; that from such decision of the judge of the superior court of Bibb County appeal could have been had, although in fact no such appeal was taken; that the record of the petition for change of venue, the answer thereto, and the order of the court thereon were court records of Bibb County, and the only way such records could have become a part of the record in this case was for a transcript of these pro-

ceedings, certified under the seal of the clerk of the superior court of Bibb County, to have been offered in evidence as an essential part of the proof of venue of the alleged crime, upon the trial of John Howell in Houston superior court; that the brief of evidence now before this court in this case shows that no transcript of the record of the case in Bibb superior court, made by the petition for change of venue, the answer and the order of the judge thereon, was offered by the State in the trial of John Howell in Houston superior court; that the superior court of Houston County, in the absence of any proof of the necessary steps taken to change the venue of the case, could not know that "this case is here before you regularly to be tried, every necessary step having been taken in this court to give you jurisdiction to try and determine this issue," which quoted language of the trial judge constituted a part of his charge to the jury in this case; that the superior court of Houston County could not take judicial cognizance of the proceedings to change the venue, which were had in Bibb superior court, even though the judge of the superior court of Bibb County issued an order directing that the transcript of such proceedings be sent by the clerk of the superior court of Bibb County to the clerk of the superior court of Houston County; that this is true notwithstanding the same judge presided in the trial of the case in Houston County who heard and passed upon the issues raised by the petition for change of venue, and the answer thereto, in Bibb superior court; that "the superior courts are not bound to take judicial cognizance of what had previously transpired before them, unless the record of such proceedings are exhibited as evidence (*Clifton* v. *State of Georgia*, 53 *Ga.* 241 (3));" that the only way in which the record of the proceedings for change of venue in Bibb superior court can be brought up as a part of the record in this case is for this court to hold that it can and will take judicial cognizance of the record of these proceedings in Bibb superior court; that this court will not take judicial cognizance of the motion for change of venue, the answer thereto, and the order of the presiding judge thereon, which proceedings were had in Bibb superior court. The plaintiff in error cited, in support of the last proposition, *Glaze* v. *Bogle*, 105 *Ga.* 295 (3) (31 S. E. 169); *Fagan* v. *Jackson*, 1 *Ga. App.* 24 (57 S. E. 1052); *O'Connor* v. *U. S. A.*, 11 *Ga. App.* 246 (75 S. E. 110.)

We are of the opinion that the contentions of the plaintiff in error on the question of the diminution of the record are not sound. It must be borne in mind that the record sought by the defendant in error is not the record of another case, but is a part of the record in this same case. The order of the court changing the venue from the superior court of Bibb County to the superior court of Houston County is not a matter that the jury could take into consideration at all. That related to the question of jurisdiction, and jurisdiction is a question for determination by the court and not the jury, and, as appears from the added record sent up, the court ordered the case tried in Houston County on motion of plaintiff in error himself. Consequently, to have introduced in evidence that record ordered transferred from Bibb superior court to Houston superior court could have been of no benefit or service to the jury. The indictment charged that the crime was committed in Bibb County; that fixed the venue, so far as the original jurisdiction was concerned. It is always necessary that the probata shall correspond with the allegata; and therefore proof that the crime was committed in Bibb County was essential in order to sustain the indictment. That proof was introduced, as appears from the record. This court has ordered the clerk of the superior court of Houston County, which it has the right to do, to send up a certified copy of the petition for change of venue from Bibb County, and the order of the judge changing the venue to Houston County; and those proceedings show that the change was made on the motion of the plaintiff in error. The court's order settled the question of jurisdiction when it put jurisdiction of the case in Houston County; and therefore the introduction of the court's order would have put nothing before the jury which they had any right to consider. They could decide nothing with reference to jurisdiction.

2. Grounds 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 17, and 45 of the motion for new trial relate to the same subject-matter, and are argued together by the plaintiff in error, and will be considered together. During the progress of the trial the State contended that Harry Green, the deceased, was a deputy sheriff seeking to arrest the defendant when he was killed. The defendant contended that Harry Green was not an officer at the time he attempted to arrest defendant; and when LaFayette Green, a witness for the

State, was on the stand he was allowed to testify, over moyant's objection, as follows: "He [Harry Green] had been with the sheriff's office in Bibb County about ten days before his death. He went there about the 5th or 6th of May, and had been serving regularly during that time as far as I know." The grounds of objection were: (1) That if the deceased was a deputy sheriff, there was higher and better evidence of that fact than the oral statement of the witness. (2) That the statement of the witness was a mere conclusion and opinion, he having given no facts on which the opinion was based. (3) That the statements were mere conclusions given by a non-expert witness, without giving the facts on which they were based. There was other evidence of a similar import. The plaintiff in error also excepts to the charge of the court to the effect that if the deceased was an officer and undertook to arrest the defendant, he had the right to arrest him, provided that at that time he knew the whisky was in his possession, or he was transporting liquor, etc., "provided you think beyond a reasonable doubt that Green was a duly authorized officer for the purpose of making the arrest; and if he shot him for that reason to prevent him from arresting him, and that was the only reason, then he would be guilty of murder, if that was the only motive;" the exception being that there was no evidence on which to base the same. There was evidence to the effect that the deceased had been sworn in as a deputy sheriff, and had been acting as such for ten days or more. We are of the opinion that neither the admission of the evidence objected to, nor the charge complained of, was error for any reason assigned. The officer was certainly an officer de facto, and such an officer may be proved to be such by his acts. Civil Code (1910), § 5754. See *Allen* v. *State,* 21 *Ga.* 217 (68 Am. D. 457). Proof that a person acts as a public officer is prima facie sufficient to show that he is such officer. *Allen* v. *State,* supra. Even if the officer has not taken the prescribed oath, his official acts are valid. *Stevens* v. *State,* 106 *Ga.* 116 (2) (32 S. E. 13); *Earl* v. *State,* 124 *Ga.* 28 (52 S. E. 78). We are of the opinion that the evidence objected to is not a mere conclusion of the witness. To testify that one is acting as a deputy sheriff is not merely stating a conclusion, but states a fact. Several of the witnesses testified that the deceased had been arresting people, taking them to jail and delivering them to

the jailer, and that he served processes and was patroling the high-
ways; and to state these facts is not merely to state the opinion of
the witness, or his conclusion that the deceased was an officer.

3.   The 14th and 15th grounds of the motion for new trial com-
plain because, in answer to the following question asked by the
solicitor-general: "What statement, if any, have you heard the
defendant make about what was going to happen the next time
anybody tried to arrest him or tried to catch him?" the witness
was permitted to answer, over objection, "The defendant and my-
self were talking about it (his being arrested) one Saturday morn-
ing. I don't know how long it was before the shooting. It was
not six months ago. I am not going to say exactly when it was,
because I don't know. I would not say it has been six months
ago. John Howell said the next man that tried to catch him
would not have an easy job." The 15th ground complains be-
cause the court allowed a witness to testify to substantially the
same thing as set out above. The grounds of objection were: (1)
That such testimony would tend to put the defendant's character
in evidence by the State, which is not a legitimate matter of in-
quiry until the defendant has offered in evidence his good charac-
ter. (2) Because the statement attributed to the defendant, that
the next man who tried to catch him would not have an easy job,
was irrelevant; and further, because it contained no threat against
the deceased and no suggestion of any harm intended towards him,
and could not have referred to him. We are of the opinion that
the evidence is not subject to either of these objections. Evidence
of threats made by a defendant against a class of persons to which
the deceased belonged at the time of the homicide is admissible.
Underhill on Crim. Ev. (3d ed.) 732, § 508; Wharton on Crim.
Ev. (10th ed.) 1704, § 909; 6 Enc. Ev. 643. But it is argued
that the deceased, at the time the threats were alleged to have been
made, was not a member of the class referred to by the defendant.
We think it can make no difference, if subsequently to making the
threat against the class and prior to the homicide the deceased be-
came a member of that class. The threat was not directed against
the deceased personally, but against any officer or a member of a
class of persons who might undertake to arrest him. Evidence
that is material and relevant, offered by the State in the prosecu-
tion of one for a violation of the criminal law, is admissible even

though it may tend incidentally to put the defendant's character in issue. *Owensby* v. *State,* 149 *Ga.* 19 (98 S. E. 552) ; *Smith* v. *State,* 148 *Ga.* 467 (2) (96 S. E. 1042) ; *Little* v. *State,* 150 *Ga.* 728, 729 (105 S. E. 359).

4. In ground 16 of the motion for new trial plaintiff in error complains because, during the progress of the trial, the trial judge did intimate and express an opinion in the presence and hearing of the jury as to what had been proved in the case and as to the weight to be given certain testimony. The circumstances under which said expression of opinion was alleged to have been made were as follows: "The undisputed evidence had shown that on the morning after the homicide there were several indentations on the rear of the Dodge car that the defendant was driving the night before, and the defendant was contending that these were bullet marks made by the deceased's pistol just before the killing, when the deceased was shooting at him from behind, and the State was contending that these bullet marks were not made by a person shooting from the rear, and hence were not made by the deceased when he was pursuing the defendant." William Branan was on the stand as a witness in behalf of the State, and he testified as follows: "I saw a mark or dent on the Dodge car [referring to the car driven by the defendant when he was chased and shot at by the deceased] ; that license tag No. 24330 up about the left-hand corner of the body on the back, the upper left-hand corner. It looked like a glance from a pistol ball, in that there were some little pieces of lead in the place, and I put my finger in there and there was something like mica in there that came off the board. It was a small place that looked like as if it was fired by a small bullet that struck the car at some angle, because it glanced away. There was a little raised place in the body that knocked the paint off and made a dent, and in that dent was a little raised place in the body as large as the lead of that pencil, and you could feel and see it. If it was a bullet that struck that place it glanced away, and from the rise of the body the bullet came from the front or side of the car. The rear curtains of a Dodge car extend down over the body with a little flap an inch below where the back of the top of the car is fastened to the body of the car, and my opinion is that [if] bullet was fired from the rear it would have had to go through the bottom of the top to have made the mark on the

car at that point, but coming from the other way ranging down it would not have touched the bottom of the top of the body. From these physical facts and general situation there, I would say the man that fired that bullet into that car, if it was fired from an automobile, the front seat of his automobile was about even with the rear of the car, and he reached back that way and fired in an opposite direction from which he was going. I have had a good deal of experience in the effect produced by firing a bullet on metal. I have been a deputy sheriff seven years, and have been carrying and shooting a pistol during that time. I did not see any bullets in the car at all. I saw marks on the rear. I saw a hole in the car. A man could have been to the side of the car to have fired that shot into the tire. He could have hit it at different angles except from the back of the car. I have not seen that automobile to-day. I saw it yesterday [referring to the said Dodge car]. My opinion is this mark that is on the back of the car near the left-hand corner at the top of the body, that a bullet fired from the rear would have had to go through a part of the top to have made that dent. I don't know whether a bullet made that mark or not. I will not swear as a fact the top comes down below the indentation. I did not say the top came down over the bullet mark and give that as a reason for saying the bullet could have been fired from the side. I was asked the question in my opinion from what direction the bullet was traveling any way. I am giving my opinion about it. I can not say it is a fact, for I don't say a bullet was fired in the car. I don't know whether a bullet made that sign or not."

The defendant moved to rule out of evidence all of the witness's testimony, in the following language: "I move to rule out all of his evidence, because he has given only an opinion." Whereupon in the presence and hearing of the jury the court ruled on said motion in this language: "He [referring to the witness Branan] is giving facts." Movant contends that the court erred in making said statement in the hearing of the jury, because it was an expression of opinion by the court as to what were the facts in the case, and for the further reason that it was extremely prejudicial to the defendant, and was tantamount to saying in the presence of the jury that the defendant's contention that the bullet marks were put there from the rear during the pursuit was untrue,

and that when the witness had said that the marks could not have been put there by shots from the rear he was giving the jury the facts and truth of the case. The motion "to rule out all of his evidence, because he has only given an opinion," refers to the evidence as a whole, and by reference to the evidence it will be seen that the criticism is not borne out. Much of the evidence is not opinion evidence, but is a statement of certain facts; and where an opinion is expressed by the witness, the facts are given on which the opinion is based, as they should be in the case of a non-expert witness. As to the contention that the judge expressed an opinion where he remarked that the witness was "giving facts," obviously this remark was made to counsel who had made a motion to rule out the evidence. The motion was that the evidence be ruled out because the witness was only giving his opinion. What the court necessarily meant was that the witness was giving facts upon which he based the opinion, which was a perfectly legitimate statement for the court to make under the facts disclosed in the evidence quoted above. In *Scarborough* v. *State,* 46 *Ga.* 26, 33, it was held that "It is not an expression of opinion by the judge, as to what has been proven on the trial of an indictment for keeping a lewd house, to say to the defendant's attorney (who is addressing the court upon the law of the case), in reply to the claim of the attorney that there must be proof that the defendant kept the house for profit: 'It makes no difference whether he keeps it for profit or pleasure, he is guilty.' " In delivering the opinion of the court, Judge McCay said: "It would be impossible to carry on a trial if this section of the Code, prohibiting the judge from expressing any opinion as to what is proven, is to be construed as is contended for. A judge, in deciding as to admissibility of testimony, must always, to some extent, decide as to its weight, since often its admissibility depends on that, so he must often determine what has been proven so as to say whether certain other things may be proven. To decide a nonsuit he must decide if there be enough proven to justify a verdict, etc. The only practical rule is, to treat the jury as possessed of common sense, and as capable of understanding what is addressed by the judge to them and what is not. He may not express to the jury any opinion; but if in the decision of any legal question, as it arises, he must pass upon facts, the statute does not

apply. It must be reasonably construed. In this view of the law we see no error in the remark of the judge. He only said to the counsel what was his view of the law, and this he had a right to do." And see, to the same effect, *Reinhart* v. *Miller,* 22 *Ga.* 402 (10) (68 Am. D. 506); *Croom* v. *State,* 90 *Ga.* 430 (3) (17 S. E. 1003); *Oliveros* v. *State,* 120 *Ga.* 237, 242 (47 S. E. 627, 1 Ann. Cas. 114), and cit.; *Brown* v. *State,* 119 *Ga.* 572 (46 S. E. 833); *Amos* v. *State,* 14 *Ga. App.* 589 (81 S. E. 903). In addition to what is said above the facts stated by the witness are undisputed. Consequently, if the remark of the judge, to which exception is taken, is otherwise erroneous, and we do not think it is, it is not reversible error. *Miller* v. *State,* 150 *Ga.* 710 (7) (108 S. E. 38). The case of *Phillips* v. *State,* 131 *Ga.* 426 (62 S. E. 239), cited by plaintiff in error, has no application. In that case the complaint was that the court misstated the contention of the defendant.

5. The court charged the jury as follows: "If John Howell shot Harry Green, there can be no justification for such shooting unless it should appear that at the time he shot Harry Green it was necessary for him to shoot Green in order to protect himself from being either killed by Green or suffering what is known as a felonious assault at the hands of Green, or the circumstances must have been such as to justify him in believing that his life was in danger or that he was in danger of suffering a felonious assault at the hands of Green. There can be no justification for the killing of a human being except it be a real or apparent necessity, an apparent necessity which is sufficient to authorize a reasonable man to believe that a necessity does exist. It may sometimes happen and does sometimes happen that a man is justified in shooting or killing another, acting under the fears of a reasonable man that his life is in danger, or that he is in danger of a felonious assault, when as a matter of fact there was no danger, but the circumstances authorized him to believe it; but, in a case of that sort, it must appear that the circumstances were such as to authorize him to have fear for his life or for his safety from a felonious assault. A bare fear would not be sufficient. It must not be the fear of a cowardly man, or a man that is not reasonably courageous, but it must be the fear of a reasonable man, reasonably courageous.

"Now if you should decide in this case John Howell not only

shot Harry Green but that he shot him when there was no actual or apparent necessity to shoot and kill, then you would go further and decide whether or not he is guilty of the offense of murder or of some other offense. I charge you, gentlemen, that an arrest may be made for a crime by an officer, either with a warrant, or without a warrant if the offense is committed in the presence of the officer. Now in this case the question is raised as to whether or not the deceased was a deputy sheriff, and was an officer authorized to arrest. I charge you, gentlemen of the jury, that if Harry Green was acting as an officer, was acting as deputy sheriff, duly appointed, and if he was performing the functions of a deputy sheriff of Bibb County, and had been doing so for several days, and the evidence shows that he was really acting as deputy sheriff, the presumption would be that he was duly qualified so to act, and he would be known as a de facto officer, and you would be authorized so to presume, in the absence of any proof to the contrary. Now, if Harry Green was a lawful deputy sheriff acting as a deputy sheriff, then he had the right, or the same right, to arrest one who violates the law that the sheriff himself would have, and he would have the right to arrest for crime, a misdemeanor or any other crime, committed in his presence. Now I charge you as to what that means, the same authority of the sheriff to arrest for crime committed in his presence; it means that he must be in possession of such knowledge of the commission of the crime as makes him reasonably certain. He can not arrest on a mere suspicion. He must be able to know to a reasonable certainty that the crime is being committed in his presence, in order to arrest without a warrant under that provision of law. Of course, if he sees the crime committed, or by the exercise of any of the senses he observes it, or if he has knowledge together with what he sees, and he reasonably knows that a crime is committed, and if as a matter of fact a crime is being committed, that would be sufficient justification for an acting officer to make an arrest.

"I charge you, gentlemen of the jury, in this case, that if at the time, or just preceding the time, that Green was shot, if you find he was shot and killed, that just preceding the time he was killed, the officer, or Green, the man who is claimed to be an officer in this case, and if he was an officer, and undertook to arrest the defendant, he had the right to arrest him, provided if at that

time he knew that whisky was in his possession, or he was transporting liquor, he had the right to arrest him; and if this defendant upon the notification by Green that he was going to arrest him, if he shot and killed him because of the threatened arrest, or even of the attempted arrest, then he would be guilty of murder, provided you think the arrest was legal, provided you think beyond a reasonable doubt that Green was a duly authorized officer for the purpose of making the arrest, and if he shot him for that reason, to prevent him from arresting him, and that was the only reason, then he would be guilty of murder, if that was the only motive.

"Now in this case I charge you this, that there are two grades of unlawful homicide in Georgia—there are several grades—but there are two grades of homicide where one intentionally kills another. Where one intentionally kills another with malice, the killing is murder; where one unlawfully kills another without malice, then the killing, where it is intentional, would be voluntary manslaughter. Now I charge you, gentlemen of the jury, in this case, that if prior to the final meeting of Green and this defendant, if they did meet down in the swamp, Green had chased him through the City of Macon, following him in an automobile and shot at his automobile several times, shot at him, and the defendant understood he was being shot at by Green, this was an unjustifiable assault by Green. Green had no right under the law to shoot at this defendant under those circumstances; and if Green, or if in the jury's opinion the shooting by Green at the car, if the car was shot at by Green, without any intention on the part of Green to shoot Howell, then you would consider the law of voluntary manslaughter in this case."

In grounds 24 to 29 inclusive, and in grounds 32 to 38 and in ground 51, of the amended motion for a new trial, error is assigned on certain excerpts from the above-quoted charge. Without taking up these excerpts in detail, which are numerous, we will consider the assignments of error with reference to the entire charge on this branch of the case. The exceptions to this charge are, among others, that it restricted the justification of the defendant in shooting the deceased to that defense of himself under a real or apparent necessity; whereas, under the law and facts, it is defendant's contention that "the defendant was justified if he shot the deceased to prevent an illegal arrest of himself by the

deceased, if such shooting and killing were necessary to prevent such illegal arrest or apparently so." A further criticism is that the defendant was justified under the law if he shot the deceased in order to protect his property, to wit, his automobile, from destruction or serious damage by the deceased when it was really or apparently necessary to do so; that the charge placed upon the defendant the burden of proving his innocence, and intimated that Howell did shoot Green; that the charge eliminated the right of the defendant to kill while under the fears of a reasonable man, and thus made the defense of justification depend upon a necessity to kill; that there was no evidence to authorize the charge; that the court erred in submitting to the jury the question as to whether the deceased was acting as a deputy sheriff duly appointed, there being no proof that the deceased had been thus duly appointed; that the jury was instructed that if the deceased was performing the functions of a deputy sheriff and had been doing so for several days, the presumption would be that he was duly qualified so to act, and he would be known as a de facto officer, etc. This last criticism of the charge is considered in another division of this opinion, and need not be further considered here.

In the light of the evidence in this case and of the law applicable thereto, we are of the opinion that the charge of the court quoted above is not subject to the criticisms of the plaintiff in error. An illegal arrest is a trespass, and under our law is a misdemeanor, and the taking of human life can not be justified in order to prevent a mere trespass. *Monroe* v. *State, 5 Ga.* 85 (4); *Smalls* v. *State,* 99 *Ga.* 25 (25 S. E. 614); *Coleman* v. *State,* 121 *Ga.* 594 (7, 8) (49 S. E. 716); *Perdue* v. *State,* 135 *Ga.* 277 (4), 284 (69 S. E. 184); *Wall* v. *State,* 153 *Ga.* 309, 323 (112 S. E. 142); 1 Bishop New Crim. Law, § 868; 2 R. C. L. 474, 475, § 32; 30 C. J. 78, § 257. In *Norton* v. *State,* 137 *Ga.* 842 (3) (74 S. E. 759), this court held that "The mere fact of unlawful arrest will not alone authorize the killing of the officer making it. But if, in the progress of the transaction, the officer is about to commit a felony upon the other party, or so acts and makes such a show of violence as to excite in the person sought to be arrested the fears of a reasonable man that a felony is about to be committed upon him, and such person acts under the influence of those fears and not in a spirit of revenge, he may protect himself, al-

though it may be necessary to slay the officer for that purpose." The charge of the court complained of here is in substantial accord with the ruling set out above. See *Alexander* v. *State,* 160 *Ga.* 769, 770 (129 S. E. 102); *Paramore* v. *State,* 161 *Ga.* 166 (129 S. E. 772). Of course, if the motive of the accused in shooting the deceased was solely to prevent an illegal arrest from being effected, he would be guilty of voluntary manslaughter; but if the accused shot and killed the deceased at a time when there was no actual or apparent necessity to do so, either to save his own life or to prevent a felonious assault from being committed upon him, he would be guilty of the offense of murder. See *Croom* v. *State,* 85 *Ga.* 718 (11 S. E. 1035, 21 Am. St. R. 179); *Thomas* v. *State,* 91 *Ga.* 204 (18 S. E. 305). Our law declares that words, threats, menaces, or contemptuous gestures will not be sufficient provocation to reduce a homicide from murder to manslaughter; and if the defendant shot and killed the deceased simply because the deceased said he intended to arrest the accused, the killing would be murder, and a mere threat on the part of the deceased to kill the defendant would not reduce the killing from murder to manslaughter. *Johnson* v. *State,* 105 *Ga.* 665 (31 S. E. 399). An officer in this State may arrest one for a crime committed in his presence, without a warrant. A crime is committed in the presence of an officer if he sees it committed, or if by the exercise of any of his senses he has knowledge that a crime is being committed by the person sought to be arrested. Such circumstances would justify an arrest without a warrant. *Ramsey* v. *State,* 92 *Ga.* 53 (4), 62, 63 (17 S. E. 613).

The Penal Code (1910), § 72, provides that "If after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing." There is nothing, we think, in this case which makes the section of the Penal Code just quoted applicable to the facts of this case. There is nothing to indicate that the defendant, in killing the deceased, acted because he feared

his automobile was about to be destroyed, or taken from him. So we are of the opinion that, applying the foregoing principles to the facts of this case, there was no error in the charge of the court, as against the defendant, nor in his omission to charge. The charge was as favorable to the defendant as he was entitled to have.

6. Movant contends that the verdict in this case is contrary to law and without evidence to support it, and that the judgment should be reversed on the general grounds of the motion for new trial. It is insisted that while the defendant on the night of the killing was committing a misdemeanor, in that he had in his possession intoxicating liquors, the liquors were so covered up and concealed that the deceased could not ascertain the contents of the defendant's car as it passed him; that he thereupon gave chase to the defendant and attempted his arrest on the mere suspicion of the defendant's guilt; that the deceased had no warrant for the arrest of the defendant; that the defendant in contemplation of law had committed no crime in his presence, and was not endeavoring to escape, but was driving quietly along the public high-way when the deceased began to pursue and shoot at him; that if the defendant was committing no crime in the presence of the deceased in contemplation of law, an arrest attempted by the deceased on mere suspicion was illegal, and if the defendant killed the deceased to prevent such illegal arrest he could be convicted of no higher grade of homicide than voluntary manslaughter. The legal phase of this last question has been considered in the preceding division of this opinion, in which the rule of law in such cases is discussed and determined. It remains for us to say whether the evidence, under the rules of law given by the court, was sufficient to authorize the verdict rendered. From a careful review of the evidence we are of the opinion that the evidence for the State was ample to support the finding of the jury. The defendant offered no evidence at all, but relied upon his statement. The evidence for the State, in substance, was that the deceased, Harry Green, had been sworn in as a deputy sheriff for Bibb County, and at the time of his death had been on duty for several days, acting as such officer, and was working as such under the directions of the sheriff and chief deputy sheriff of Bibb County. The defendant, John Howell, the evidence discloses, had been arrested

on several occasions in connection with some violation of the prohibition law, and had been heard to say, sometime prior to the killing of the deceased, that the next officer who undertook to arrest him would not find it as easy as the last one did, or words to that effect. On the evening of the day of the homicide, the deceased discarded his motorcycle and procured a Ford touring car. Between 12:30 and 1:00 o'clock that night the deceased was seen in North Macon across the Spring street bridge on the eastern side of the river, inside the city limits of Macon, and, according to the witness, was not drinking, but was sober. During that same evening the defendant, John Howell, and a negro boy Robert Battle, who worked for him, went from Macon to Round Oak in Jones County in a five-passenger Dodge touring car, for the purpose of obtaining a car-load of liquor. It also appears from the evidence that the defendant had a 38-caliber Smith & Wesson pistol, which he had bought from a man named Olinham. The negro boy had a repeating shotgun which they took with them in the car, as the negro boy stated, for the purpose of killing a rabbit if one appeared. The route from Macon to Round Oak lay across the Spring street bridge through a portion of North Macon and on into Jones County. The defendant and the negro, according to his evidence, went to Round Oak and saw a man named Joe Maynard, who accompanied them and went to the home of an illicit distiller of whisky and there procured 100 gallons of whisky contained in kegs, nine of which were ten-gallon kegs and two were five-gallon containers. These kegs or barrels were put in the back part of the car, three in the foot of the car, three on top of the other three, and three in the back seat, the cushion having been removed, and the two five-gallon kegs on top of the three last mentioned. A canvas cover was spread over this whisky. About one o'clock a. m. of the same night the defendant and the negro boy arrived at Macon, and as they approached the Spring street bridge they saw the deceased in his Ford automobile standing near a filling station. The deceased, Green, and the defendant were acquainted with each other. The defendant knew that the deceased was an officer. When the car containing the liquor and driven by the defendant passed, Green followed in his car. The defendant spoke to the negro boy and said, "That is an officer after us," and increased the speed of his car. He went in

a circuitous route through the City of Macon. Green called out to the defendant to "halt," to "stop," and these words were heard by the negro boy and repeated in his evidence. While they were passing through the city, after Green had undertaken to stop the fleeing car by calling upon the defendant to halt and to stop, Green fired his pistol, and one bullet pierced the spare tire on the rear of the car of the defendant, and one struck the defendant's car about the center of the space marked off by the rim of the spare tire and there was a bullet mark on the left-hand side of the car in the rear, near the edge of the body where the curtain from the top was fastened to the body over the left rear fender. After passing through certain streets in the business district of Macon, the defendant continued to drive his car out Second street to Elm street, down Elm street one block and into Third street and back towards the business district of the city, where he turned into Hawthorne street one block, and then into Broadway. At Broadway he turned south again towards the city limits one block, then east into Bay street under the underpass, out through a section of the city known as Tybee, and then into the river swamp district. The deceased fired one or two shots at or towards the Dodge car near the underpass. He did not fire any more shots, so far as the evidence discloses. The defendant finally stopped his car in the swamp on the right-hand side of the road.

The witness Battle was with the defendant, and testified: "Mr. Howell cut off the motor. Mr. Green drove on the left of us and stopped, and went on getting out of his car, and he said, 'I am sorry, John, I have got to do it,' and Mr. John says, 'Do what?' and Mr. Green says, 'I have got to arrest you,' and Mr. John shot him. When Mr. Green rolled up he says, 'I am sorry, John, I have got to do it,' and Mr. John says, 'Do what?' and Mr. Green says, 'I have got to arrest you,' and Mr. Howell shot him that quick. When the first shot was made I run. I jumped out with the gun. Mr. Green, when he stopped, did not open the door of his car, but stepped out of his car. I didn't see Mr. Green with a pistol or anything. That is all I heard them say. Mr. Howell shot once while I was there, and I heard some more shots after I got up the road. I didn't see Mr. Green fall. No quicker than the shot fired I done hit the ground and was gone to running. I jumped out just as he shot, and come back up the road the way

3

we went in the swamp. . . I didn't have a pistol that night. I never heard Mr. Howell say what was going to happen when they arrested him any more. I never heard him say anything about their catching him any more. I didn't see the pistol Mr. Howell had at all. I heard it shoot." There was no evidence that the shotgun was fired at all; when found by the officers at the house where the negro boy testified he had left the gun, that night, it was loaded with birdshot. The deceased was shot in the face, and in the back of the head, and under the left arm into the chest. When found he was lying near the center of the road, face down, in a pool of blood. One side of the face of deceased had powder burns on it, and a 38-caliber pistol bullet was found on the ground just under his face. The wounds on the deceased were made by a 38-caliber pistol and a 38-caliber pistol was identified by the former owner, Olinham, and was found in the defendant's possession the day after the homicide, indicating that four shots had been fired from it recently before it was found by the officers. In his statement the defendant went at some length into detail as to his trip to Round Oak with the negro boy, telling of the incidents connected with the purchase of the liquor and the transferring of it from the barrels of the distiller into his own containers, and of the trip back to Macon, and of the course he took through the business district of Macon, and described in detail the route he took to the scene of the homicide. He said very little as to the homicide itself. He said that not a word was spoken; that when the deceased came up to the car in which he and the negro were seated, the negro shot him; and that after the negro shot him he came back to the car, dropped his pistol, picked up the shotgun, and walked off across the field. The defendant denied having anything to do with the killing of the deceased.

L. J. Stevens, a deputy sheriff of Bibb County, testified: "I was on Oak street, just around the corner from John Howell's store, when he was arrested. I talked with him shortly after that at the jail, and asked him of his whereabouts on the night of the killing. . . He says, 'Mr. Stevens, I am not going to tell you a lie.' He says, 'I went to Jones County and carried the negro with me, Robert Battle, and coming back Tubby [the deceased] was parked on the far end of the Spring street bridge, and he rode up and told me to drive to the sheriff's office with the liquor, and

I give him $40 and started on, and I thought everything was all right, and I looked 'back and saw he was following me and I tried to get away from him, and he overtook me in the swamp when I stopped, and he came up to my car to me and says, "John, I hate to do this, but you will have to come to the sheriff's office and make bond," and I was trying to prevail with him to let me go, because they had one case against me, and I offered him a load of liquor in addition to the $40;' and he says, 'My pistol was lying between me and the negro, and the negro picked it up and stuck it between me and the steering-wheel and commenced shooting,' " etc.

The judge did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*