## HARRIS *v.* THE STATE.

120  167
j120  311
120  312
120  167
123  569
123  588

1. On the trial of an indictment for assault with intent to murder, where there was evidence from which the jury might have found that the accused shot the prosecutor, that the shooting was not justifiable, but that it was not done with the intention to kill the prosecutor, it was not error for the court to charge the law as to the statutory offense of shooting at another, nor will a conviction of that offense be set aside as contrary to law.
2. While it was error, in such a case, for the judge to charge the jury that the only thing for them to consider, in order to determine whether the accused was guilty of assault with intent to murder, was whether, if the prosecutor had died, the killing would have been murder, the fact that the jury did not find the accused guilty of assault with intent to murder shows that the error was harmless, and a new trial will not result on that account.
3. It is not error to charge, on the trial of a criminal case, that in order for the accused to overcome evidence of his guilt by setting up an alibi, the evidence of the alibi must satisfy the jury that the accused "was at a place where it was impossible for him to have committed the crime."

Submitted April 22, — Decided May 10, 1904.

Conviction of shooting at another.    Before Judge Barrow. Motion for new trial before Judge Cann.    Chatham superior court.    February 6, 1904.

*Travis & Edwards,* for plaintiff in error.
*William W. Osborne, solicitor-general,* contra.

CANDLER, J.    The accused was tried under an indictment charging him with assault with intent to murder, and was found guilty

of the lesser offense of shooting at another. The evidence for the State was in direct conflict with that introduced by the accused. The prosecutor testified that on the occasion under investigation he had a difficulty with one Barney at the home of the accused; that shortly thereafter he left to go to his own home, some 200 or 250 yards distant from where the accused lived; that the accused followed him, pistol in hand, overtaking him within a short distance and telling him "that he didn't allow any row on the place;" that the prosecutor explained that he had been talking to the father of the accused when Barney had come in and "commenced to fuss;" and that after this explanation he turned to go on home, when the accused, entirely without provocation, shot him, the ball taking effect in the arm. Only one other witness was introduced by the State; and while his version of the affair was materially different from that given by the prosecutor, the two accounts corresponded in that they both made out a case of an unprovoked assault upon the person of the prosecutor, and one upon which the jury would have been amply justified in basing a verdict of guilty of assault with intent to murder. On the other hand, the defense introduced numerous witnesses who testified most positively that at the time the prosecutor claimed to have been shot the accused was inside his yard; that he had no pistol, and consequently that he did not fire the shot which, it seems to have been admitted, struck the accused. From evidence which was not contradicted it also appears that at the time of the shooting there was in progress in the immediate vicinity of the home of the accused what was known as a "hot supper" — a form of social diversion which this court has had frequent occasion to observe is a most fruitful source of homicide among the colored population, — and that the festivities were punctuated by numerous pistol-shots at and near what one of the witnesses felicitously calls "the shouting-house." Indeed, there seems to have been "a sound of revelry by night," for still another witness says: "It looked like a young war, there was so much pistol-firing." Two widely different theories of the shooting of the prosecutor are thus presented by the evidence; one, that he was without provocation assaulted by the accused; the other, that he was struck by a random bullet fired by one of the participants in the "hot supper," the accused having no connection whatever with the shooting.

1. Without giving in detail the grounds of the motion for a new trial, to the overruling of which the accused excepts, there are three general questions which it presents for our consideration. The first is, were the jury warranted in finding the accused guilty of the statutory offense of shooting at another? He contends that under the evidence there was no middle ground, and that he should have been either convicted of assault with intent to murder, or else acquitted; and that under the ruling of this court in the case of *Kendrick* v. *State*, 113 *Ga.* 759, a new trial should for that reason have been granted. While a casual reading of the evidence would seem to justify this contention, we are clear, after a more careful investigation of the record, that this case is easily distinguishable from the *Kendrick* case, and that the verdict returned by the jury was not unwarranted. In a case of this sort the intention of the accused is always for the jury. A contrary rule prevails from that holding in homicide cases, and there is no presumption of an intent to kill from the unlawful use of a deadly weapon. Having this rule in view, we think the jury were authorized to infer, from the short distance which separated the prosecutor and the accused and the fact that the former was shot only in the arm, that there was no intention on the part of the accused to commit a homicide. As before stated, there was ample warrant for a verdict of guilty of assault with intent to murder; but such a verdict was not demanded, nor was the acquittal of the accused the only alternative for the jury. The jury might well have had a reasonable doubt of the intention to kill, which is an essential element of the crime of assault with intent to murder, and yet have been satisfied that the shooting was not justifiable; and upon that hypothesis it was entirely proper for them to return a verdict of guilty of shooting at another. But even if this were not so, the accused would have no reasonable ground to complain of the verdict rendered, or of the charge of the court on this branch of the law to which exception is taken; for it appears from the context of that charge that it was given in compliance with a request made by his counsel in the progress of the trial. *Quattlebaum* v. *State*, 119 *Ga.* 433.

2. Error is also assigned on the following charges of the court: " In order to determine whether or not the defendant is guilty of assault with intent to murder, you just simply ask yourselves the

simple question, would it have been a case of murder if Lanzy [the prosecutor] had died from the shot." "If this assault had resulted in the death of Lanzy, and, under the facts and circumstances disclosed by the testimony in this case and the statement of the defendant, that killing would have been without justification or excuse, in whole or in part, it would have been a malicious killing, and he (the defendant) would have been guilty of murder; and if that is true from the facts and circumstances as disclosed by the testimony of the witnesses and the defendant's statement in this case, and you believe it to be the truth of it, then he would be guilty of assault with intent to murder." We have no hesitancy in holding that both these charges were erroneous. The correct rule on this subject was laid down in the case of *Gallery* v. *State*, 92 *Ga.* 463, where the exact question now under consideration was decided, and where it was held: "Where death results from the unlawful use of a deadly weapon, the law by presumption imputes to the slayer an intention to kill; but where death does not result, intention to kill is not matter of legal presumption but matter for inference by the jury. Consequently, it narrowed the functions of the jury too much to instruct that 'if under this indictment a killing had ensued and if the crime would have been murder, then the defendant would be guilty of assault with intent to murder.'" In view of the fact, however, that the accused in the present case was not convicted of assault with intent to murder, but merely of the offense of shooting at another, we fail to see how he could have been injuriously affected by these charges, erroneous though they undoubtedly were. It is also to be noted that in a later portion of his charge the court, at the request of counsel for the accused, gave to the jury the correct rule of law as laid down in the *Gallery* case, supra, and to that extent the error in the earlier charges will be considered as cured. At all events error which the result of the trial conclusively shows was not harmful to the complaining party will not be held cause for a new trial.

3. Exception is also taken to the charge of the court to the effect that evidence of alibi, in order to overcome the presumption raised by the law, must be such as to satisfy the jury that the accused "was at a place where it was impossible for him to have committed the crime." It is contended that this charge lays down

a stricter rule than that prescribed in the Penal Code, § 992, which is that alibi, as a defense, involves merely "the impossibility of the prisoner's presence at the scene of the offense at the time of its commission." It is further contended that this was particularly harmful to the accused, because under the evidence in his behalf he was not present at the scene of the offense, but was near enough thereto to make his guilt within the limit of possibility. A thoughtful consideration of the reason of the law of alibi as a defense must show that this contention is wholly unsound. Alibi is a physical circumstance, and derives its entire potency as a defense from the fact that it involves the physical impossibility of the guilt of the accused. An alibi which still leaves it possible for the accused to be the guilty man is no alibi at all; for if he committed the offense, the scene of that offense is the place where he was at the time of its commission, and thus he is not within even the literal meaning of the words of the code section. The matter of distance from the person assaulted or killed is of slight if any importance. It is conceivable that a man could be within a very few feet of another, and yet be so placed as to render his guilt of any crime in connection with him a physical impossibility. If this is proved on the trial, he has established an alibi. On the other hand, it is equally conceivable that a homicide or an assault could be committed though a great distance intervened between the person assaulting and the one assaulted. The charge complained of accurately sets forth the true rule of law on this subject, and affords no ground for a new trial.

The foregoing practically disposes of every ground of the motion for a new trial which requires discussion here. While, as we have shown, the trial in the court below was not free from errors, taking the record in its entirety, we are constrained to hold that no sufficient cause has been shown for a reversal of the judgment refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*