## ETHRIDGE *v.* THE STATE.

1. "A juror in a criminal case who is related either by consanguinity or affinity within the ninth degree to the prosecutor, ascertained according to the rules of the civil law, is a disqualified juror."

(*a*) Accordingly, where on the trial of one accused of murder, the undisputed evidence showed that a "juror's father's great-great grandmother was a sister of the grandfather" of the murdered man, it was error to hold that such juror was related to the deceased within the tenth degree, and was therefore competent to serve on the jury. Such juror was related within the ninth degree, according to the rules of the civil law, and was therefore incompetent to serve on the jury.

(*b*) When error is assigned, it must be shown that the plaintiff in error was in some way injured, or that there was an advantage to the State. It is held under the facts of this case that the plaintiff in error was not injured by the above ruling, it not being shown that plaintiff in

Criminal Law, 16 C. J. p. 555, n. 18; p. 556, n. 39 New; p. 624, n. 19; p. 644, n. 77; p. 650, n. 31; p. 662, n. 65; p. 833, n. 94; p. 942, n. 63; p. 977, n. 45; p. 987, n. 74; p. 1010, n. 15; p. 1146, n. 53; 17 C. J. p. 212, n. 18; p. 222, n. 24; p. 245, n. 70; p. 272, n. 2; p. 274, n. 17; p. 293, n. 48; p. 317, n. 10.

Homicide, 30 C. J. p. 156, n. 97; p. 203, n. 82; p. 302, n. 11; p. 310, n. 25; p. 337, n. 86; p. 395, n. 14.

Juries, 35 C. J. p. 317, n. 90, 92; p. 320, n. 24, 31; p. 321, n. 37.

Witnesses, 40 Cyc. p. 2422, n. 97; p. 2423, n. 99; p. 2427, n. 27, 28; p. 2429, n. 30; p. 2448, n. 70; p. 2456, n. 31.

error had exhausted his strikes, or that the State was benefited; and therefore it is not cause for a new trial.

2. After the fact of a conspiracy to commit crime is proved, the acts and declarations of any one of the conspirators during the pendency of the criminal project, are admissible against all the conspirators. A conspiracy may be shown by circumstantial as well as by direct evidence.

3. In the examination of witnesses, the general rule is that leading questions are allowed in cross-examinations, and only in these; but the court may exercise a discretion in granting the right to the party calling the witness, when, from the conduct of the witness or other reason, justice requires it. The discretion of the court was not abused in the present case in allowing the solicitor-general to ask certain leading questions of certain witnesses.

4. It was not error for the court to permit the solicitor-general to ask a witness for the State, and the witness to answer, the questions set out in grounds 11 and 12 of the motion for new trial, for any reason assigned. The witness was testifying to independent facts.

5. Evidence of threats made by one accused of murder, before the homicide, against a class of persons to which the deceased belonged at the time of the homicide, is admissible in evidence against one making the threats.

6. A ground of a motion for new trial not argued by the plaintiff in error will be treated as abandoned.

7. It was not error to permit a witness for the State to testify as set out in division 7 of the opinion, for the reason assigned that the testimony sought was irrelevant and immaterial.

8. The remark of the court as set out in ground 24 of the motion is not subject to the criticism that it was an intimation that the witness had been intimidated, etc.

9. The testimony objected to in ground 25 of the motion is not irrelevant and immaterial.

10. It was not error to permit the solicitor-general to read to the jury a writing, unsigned, found on the person of one of the deceased, directing him how to find the still located on the land of Atkinson Ethridge, the alleged co-conspirator.

11. Acts and conduct of one accomplice during the pendency of the wrongful act, not only in its perpetration, but also in its subsequent concealment, are admissible against each other.

12. The charge of the court as set out in ground 34 of the motion was not erroneous as not authorized by evidence showing a conspiracy between movant and Atkinson Ethridge, the alleged co-conspirator.

13. It is not error on the trial of one charged with murder, where circumstantial evidence is relied on for conviction, for the court to charge the jury: "That is, under the laws of Georgia, the court charges you that the law authorizes the conviction of a person on circumstantial evidence, if the proven facts are consistent with the guilt and inconsistent with innocence of the defendant beyond a reasonable doubt, and you take that principle of law in connection with the other law that the court has read to you in passing upon the guilt or innocence of the defendant in this case." Considering this charge in connection with the general

charge, it did not put the burden of proof upon the defendant of show-
ing that the circumstances of the case were consistent with his innocence
beyond a reasonable doubt.      _

14. The failure to charge the jury the law applicable to the defense of
alibi, as set out in ground 37 of the motion for new trial, was not error.
The evidence in the case did not reasonably exclude the possibility of
the defendant's presence at the scene of the homicide. '

15. The charge of the court as set out in ground 38 of the motion is not
error upon the ground that the court therein intimated and expressed
an opinion as to what had been testified to on the trial of the case.
Nor was the charge subject to the criticism that the court erroneously
instructed the jury that the statements made in certain affidavits should
not be considered by the jury, unless the witnesses making the affidavits
testified to the facts contained therein.

16. The charge as set out in ground 39 of the motion was not error on
the ground that there was no evidence to authorize the charge. There
was evidence tending to show that the plaintiff in error had an interest
in the still destroyed.

17. The evidence authorized the verdict, and the judge did not err in re-
fusing to grant a new trial.

No. 5398. NOVEMBER 15, 1926. REHEARING DENIED DECEMBER 20, 1926.

Murder. Before Judge Park. Jones superior court. March 20,
1926.

*Allen &,Pottle, W. A. McClellan,* and *E. T. Dumas,* for plaintiff
in error.

*George M. Napier,* attorney-general, *Joseph B. Duke,* solicitor-
general, and *T. R. Gress,* assistant attorney-general, contra.

HILL, J.   Atkinson Ethridge and Grover Ethridge were jointly
indicted for the murder of Floyd Malone and Frank Tucker, by
shooting them with a gun and pistol.   On the trial the defendants
severed, and Grover Ethridge was put upon trial.   The State re-
lied for conviction upon circumstantial evidence.   The jury re-
turned a verdict of guilty, with a recommendation to mercy; and
the defendant was sentenced by the court to serve in the peni-
tentiary for life.   He filed a motion for new trial upon the general
grounds and 39 special grounds.   The motion was overruled, and
the defendant excepted.     .

1.   Error is assigned in the first special ground of the motion
for new trial, because the court ruled that one of the jurors was
qualified as a juror to serve in the case.   "The undisputed evi-
dence showed that the juror's father's great-great grandmother was
a sister of the grandfather of Frank Tucker, the deceased.   Movant
respectfully contends that said juror was within the prohibited de-

gree of relationship, and was therefore incompetent to serve on said jury." In a note to this ground the court says: "As to juror Gresham Jr., Mr. Gresham stated he was a son of the juror who had shortly before disqualified on account of relationship to Mr. Tucker, one of deceased. Mr. McClelland: We charge [challenge] the juror on account of relationship to Mr. Tucker. By the court: If the statement of facts made to the court is correct, I hold that he is a tenth cousin and would not be disqualified. As I understand it, he claims he is a son of the man whose great grandmother was a sister of Mr. Tucker's grandfather. So I hold that he is removed in the tenth degree, and would therefore not be disqualified on account of relationship; and defendant's counsel say they are willing to take the statements made by this other juror (Gresham Sr.). (The juror was stricken by defendant's counsel.)" We are of the opinion that the court erred in holding that the juror was removed in the tenth degree, and that he was therefore not disqualified on account of relationship to serve on the jury. One of the challenges for cause to a juror is that he is so near of kindred to the prosecutor, or the accused, or the deceased, as to disqualify him by law from serving on the jury. Penal Code (1910), § 999 (4). In *Crawley* v. *State,* 151 *Ga.* 818 (3) (108 S. E. 238, 18 A. L. R. 368), this court held: "A juror in a criminal case who is related either by consanguinity or affinity within the ninth degree to the prosecutrix, ascertained according to the rules of the civil law, is a disqualified juror." *O'Berry* v. *State,* 153 *Ga.* 644 (113 S. E. 2) ; and see *Davis* v. *State,* 153 *Ga.* 669 (2), 672 (113 S. E. 11) ; *Smith* v. *State,* 2 *Ga. App.* 574, 576 (59 S. E. 311). The following diagram shows the relationship of the juror held to be disqualified, according to the undisputed statement of the relationship, made to the court:

It therefore appears that the juror, who was held to be competent and who was stricken by the defendant, was related within the ninth degree to the deceased. But notwithstanding the fact that the juror was disqualified, the plaintiff in error does not show that he was hurt by reason of the fact that the juror was put upon him. When the plaintiff in error assigns error he must show that he was in some way injured,—that there was injury to him, or an advantage to the State; and no such harm appears here as would require the grant of a new trial. It does not appear that the plaintiff in error had exhausted his strikes. See *Doyal* v. *State,* 70 *Ga.* 134 (2). In *Ford* v. *State,* 12 *Ga. App.* 228 (76 S. E. 1079), it was held: "Although a juror was subject to challenge for cause, on the ground that he was over sixty years of age, yet where it does not appear that the juror served on the panel that tried the accused, or that the accused was compelled, by the overruling of his challenge for cause, to exhaust his peremptory challenges for the purpose of getting rid of the juror, error in holding him competent [was] immaterial." In delivering the opinion Judge Hill said: "According to the method of computation of time, under repeated rulings of the Supreme Court of this State, the juror was

shown by his answer to have been over sixty years of age; but as the record fails to disclose whether the accused was compelled to exhaust his peremptory challenges for the purpose of getting rid of this juror, or even that he served on the jury that tried the accused, the contrary ruling by the trial judge must be regarded as harmless; for, in the absence of such proof, it was immaterial whether the juror was over sixty years old or not." And to the same effect it is stated in 16 R. C. L. 292, § 106: "In general, where it does not affirmatively appear from the record that a party had exhausted his peremptory challenges at the time the full panel of jurors was accepted and sworn, the appellate court will presume that he was not prejudiced by the action of the court in erroneously disallowing his challenge for cause, and will not grant a reversal for the alleged error." The following authorities are cited in support of the above text: 9 Ann. Cas. 279, 281; Ann. Cas. 1915D, 98, and cit. And see 24 Cyc. 324 (9); State v. Humphrey, 63 Or. 540 (128 Pac. 824); Olmsted v. Noll, 82 Neb. 147 (117 N. W. 102); State v. Banner, 149 N. C. 519 (63 S. E. 84); State v. White, 40 Utah, 342 (121 Pac. 579); Knollin v. Jones, 7 Idaho, 466 (63 Pac. 638); State v. Albana, 119 Me. 472 (111 Atl. 753); DeArman v. State, 80 Tex. Cr. 147 (189 S. W. 145); People v. Slaughter, 33 Cal. App. 365 (165 Pac. 44).

2. Grounds 2, 3, 4, 5; 6, 7, 8, 9, 14, 17, 21, 31, 32, and 33 of the amendment to the motion for new trial will be considered together. These grounds allege error because the court permitted witness M. J. Wood and others to testify as to certain conduct, on the day of the homicide, of Atkinson Ethridge, brother of the plaintiff in error, Grover Ethridge, and jointly indicted with him. This testimony was objected to on the ground that it was irrelevant and prejudicial to the plaintiff in error. The insistence of the State is that the evidence is relevant on the theory that there was a conspiracy between Grover and Atkinson Ethridge to murder the deceased. The plaintiff in error insists that there is no proof, either direct or circumstantial, of the alleged conspiracy, and that the rule as to sayings and conduct of a co-conspirator pending the illegal enterprise has no application to the present case. Of course, where a conspiracy has been proved to exist, the sayings and conduct of one of the conspirators relative to the criminal undertaking are admissible as against them all (Penal Code, § 1025), and

the conspiracy can be shown by circumstances as well as by direct proof. *Lynn* v. *State,* 140 *Ga.* 387 (7a) (79 S. E. 29), and cit. The evidence for the State tended to show, that there was an illicit distillery on the land of Atkinson Ethridge; that Grover Ethridge had been seen taking supplies to the still; that he carried whisky away from the still and from the house of Atkinson Ethridge, the alleged co-conspirator; that sometime prior to the homicide he had made threats to the effect that if any one destroyed a still of his, he was none too good to kill him; that on the day of the homicide the illicit still in question was destroyed by Malone and Tucker, the deceased, who were officers of the law charged with that duty; that almost immediately afterwards Grover and Atkinson Ethridge were seen going in the direction of the place where the homicide occurred, each in a separate automobile, that in which the plaintiff in error rode having "a diamond-tread tire," and an automobile track made at or near the scene of the killing was made by one having a diamond-tread tire; that about the time that the homicide was alleged to have been committed Grover and Atkinson Ethridge were seen coming from the direction of the scene of the homicide, both running their cars very fast; that both went in the direction of Macon, Georgia; and that when an investigation was being made at the scene of the murder, in order to ascertain who committed it, neither Grover nor Atkinson Ethridge was present, or joined in the search to apprehend the murderers. These and other circumstances shown in the record were sufficient, we think, to authorize the jury to infer that a conspiracy existed between the two brothers to murder the deceased; and that being so, we are of the opinion that the testimony of the witness M. J. Wood, and others to the same effect, as to the acts and sayings of one of the conspirators was relevant as against the other. M. J. Wood, on behalf of the State, was permitted to answer, over objection, the following questions: "Q. I will ask you whether or not you saw either of his [Grover's] brothers, shortly thereafter? A. I saw Mr. Atkinson Ethridge, I would say at 12:30 o'clock. Q. How long after the defendant, Grover Ethridge, left James Station, was it before you saw Atkinson Ethridge pass? A. 12:30 o'clock. Q. Was he running fast or slow? A. He was running faster than I would have driven a car over the road he was going, going pretty fast." The witness was also permitted to be asked and to answer the follow-

ing question: "Q. What, if anything, did Atkinson Ethridge do when he got to James Station? A. He drove up to the store, and I was out at the public road then. I was going out my back gate. He passed me and I went on in the road, and he drove up to the store and turned around, and stopped just an instant, and come back over the same road he went up there. Q. I will ask you whether or not you heard him say anything when he stopped at the store? A. At the distance I was from him I could not hear what they said. He seemed to be asking a question, but I could not say what it was. Q. State whether or not he stopped his car when he asked this question. A. I think possibly he came to a stop. Q. What, if anything, did he do after that? A. He came back down the road, still driving at a rapid pace. Q. What direction was that? A. That was to this bridge where he could take the choice of three roads. Q. From the manner in which the defendant and his brother were moving that day, state whether or not your attention was attracted to them? A. Well, Mr. Grover's movements were not unusual. He usually drives fast. But Atkinson was driving unusually fast that day. But Grover's going out was not unusual for him, I would not say. Q. The fact that one was driving so much faster than usual attracted your attention? A. Yes, it did." The witness also testified that on August 28, 1925, the day of the alleged homicide, at about 12:15 o'clock p. m., he saw the defendant going out of James Station in an automobile towards Gordon on a road that forked a short distance away, one fork going toward the scene of the homicide and another leading toward the defendant's home; and that he did not know which the defendant took. Even if the testimony objected to was irrelevant, in order for it to be ground for the grant of a new trial it must appear that it was harmful to plaintiff in error; but it does not so appear here. There was much other evidence as to sayings and acts of Atkinson Ethridge, admitted over objection on the ground that as Atkinson was not on trial, and that as no conspiracy had been proved to exist between Atkinson and Grover Ethridge, the evidence was merely hearsay, irrelevant, immaterial, and prejudicial to the movant. But, as ruled above, there was evidence from which the jury could infer that a conspiracy existed between Atkinson and Grover Ethridge; and therefore the sayings and acts of Atkinson Ethridge, which tended to throw light on

13

the conspiracy to murder the deceased, were admissible in evidence.

3. Grounds 10, 15, 16, 19, 20, 23, and 26 of the motion for new trial allege error because the court permitted the solicitor-general to read to the witness Os Pitts. a transcript from the testimony delivered by him at the commitment trial in this case before Judge Barron, of the county court of Jones County. The testimony read to the witness was as follows: "State whether or not you saw Mr. Grover Ethridge up to Mr. Atkinson Ethridge's a few minutes after you got to the house? A. Yes, sir. Q. How fast did he appear to be running? A. He gets all it has got all the time; he was running as fast as usual. Q. He was running as fast as he could? A. Yes, sir. Q. Who was the next person you saw coming up the road? A. Mr. Atkinson. Q. How was he running? A. About the same; he generally gets all they got. Q. What did he do when he got up there? Did you see Mr. Atkinson get up and go in the house? A. I met Mr. Grover. Q. Atkinson did get out. A. Yes, sir. Q. What did he do? A. The next thing I saw the cars went back out. Mr. Grover was leading. They left just like they come in, as fast as they could go. Q. Which way did they go? A. The way they come in. Q. From Mr. Stubbs? A. Yes, sir. Q. What time of day was it? A. Between 12 and 1 o'clock I guess. Q. It was after you had come to dinner? A. Yes, sir. Q. You testified to that at the commitment trial? A. Yes, sir." Movant objected to the solicitor-general reading the above testimony to the witness, on the ground that it was leading, and the statement was expressly made by the solicitor-general that it was not asked for the purpose of impeaching the witness. The court ruled that the solicitor-general would be permitted to read the testimony to the witness and ask questions. It is insisted that this was prejudicial error as against movant; that Os Pitts was clearly in sharp conflict with the testimony delivered by him at the commitment trial; and that the court was without discretion to permit the solicitor-general to lead the witness in the manner described. In a note to this ground the trial judge states that the witness clearly showed that he was a very reluctant witness; and that this also applies to certain other grounds of the motion for new trial in this case. In overruling the motion the trial judge also says: "It will be seen from the record in said case that the State had to rely principally on unfriendly witnesses to connect

the defendant with the offense; and when witnesses exemplify on the witness-stand that they are reluctant to tell what they know about the case, the court has a great latitude to allow counsel to examine such witnesses so as to bring out the truth. This is what was done in this case." In another ground of the motion, where error was assigned because the evidence was objected to on the ground that the reading of the affidavit was *leading the witness,* and that it was immaterial and irrelevant unless it was for the purpose of impeaching the witness, and that purpose was expressly disclaimed by the solicitor-general, the court in a note stated that "that affidavit and the reading of other affidavits complained of in this amended motion were allowed read to the witnesses to refresh their recollection, and I expressly stated this in the absence of the jury." Allowing the reading of the testimony delivered by the witness at the commitment trial in the case, for the purpose to which it was confined by the trial judge, was not error. *Burney* v. *Ball,* 24 *Ga.* 506, 507 (2). Nor was the discretion of the trial judge abused, under the facts, in allowing the solicitor-general to ask certain leading questions of certain witnesses for the State. Penal Code (1910), § 1045.

4. Ground 11 of the motion for new trial alleges error in permitting the solicitor-general to propound to the witness Os Pitts, sworn for the State, and in permitting the witness to answer certain questions, as follows: "Q. Isn't it true that you have also sworn to the fact that this still was owned jointly by Mr. Grover Ethridge and Mr. Atkinson Ethridge? A. Yes, sir. I have said that. I have seen them both there. Q. Isn't it also true that you have testified that Mr. Grover Ethridge brought supplies down to the still, and that he has carried liquor away? A. He has been there on the truck with Mr. Atkinson with the stuff. Whether he brought it—he and Mr. Atkinson came there on the truck. Q. Bringing supplies? A. Yes, sir." These questions and answers were objected to on the ground that the testimony delivered by the witness upon the commitment trial, or statements made by him prior to the trial, were irrelevant, hearsay, and hurtful to the movant. For the reasons given in the preceding division of this opinion it was not error to permit the solicitor-general to ask and the witness to answer the questions propounded. Ground 12 of the motion complains because the court erred in

permitting the solicitor-general to propound to Os Pitts, a witness for the State, the following questions, and in receiving the answers thereto: "Q. Did you have a talk with me about this thing? A. Yes, sir. Q. Didn't you swear to this and tell me, when Mr. Rape and Mr. Tucker tore up the still, you heard Mr. Atkinson and Mr. Grover say if they tore it up they were going to kill them? Didn't you tell me that Saturday morning? A. Yes, sir. Q. And it was true, was it not? A. Yes, sir. Q. I also had a talk with you once before, did I not? A. Yes, sir. Q. And you told me the same thing? A. Yes, sir. Q. That is true, is it not?" Movant objected to the questions and answers, on the ground that the same were irrelevant, immaterial, and prejudicial to the movant. The motion recites that the solicitor-general expressly disclaimed, in asking the questions propounded, that they were for the purpose of impeaching the witness on the ground that the State was entrapped. The questions were permitted and the answers admitted for the sole purpose of refreshing the witness's recollection, as stated by the court. Movant insists that the testimony of the witness was clear, positive, and unequivocal as delivered at the time of the trial, and that the questions and answers should not have been admitted for the purpose stated, or for any purpose whatever. We are of the opinion that it was not error for the court to permit the questions and answers, not only for the reasons given in the foregoing divisions of the opinion, but for the further reason that the witness was testifying to independent facts.

5. Error is assigned because the court permitted W. H. Jackson to testify as follows: "Q. By the solicitor-general: Mr. Jackson, what, if anything, did the defendant say with reference to the murder of Grubb? A. Why, I was just passing and went in the store, didn't stay there I don't suppose five minutes; and they were sitting down, and the gentleman with the glasses said that 'Mr. Grubb got what he ought to have got, and said if he had a still and anybody would do it that way, tear it up, he would get the same thing. What the same thing was I don't know; whether it was a killing or what it was, I could not tell." This evidence was objected to on the ground that it was irrelevant and immaterial and harmful to the movant, and that it did not illustrate any issue in the case, no evidence showing that a still

owned by Grover Ethridge had been torn up. We are of the opinion that the admission of this testimony was not error. Evidence of threats made by the defendant before the homicide, against a class of persons to which the deceased belonged at the time of the homicide, is admissible in evidence against him. *Howell* v. *State,* 162 *Ga.* 14, 22 (134 S. E. 59, 63). The witness was permitted to answer, over objection, in the *Howell* case: "John Howell said the next man that tried to catch him would not have an easy job." This court held that the admission of that evidence was not error.

6. Ground 18 of the motion for new trial was not argued by the plaintiff in error, and is considered as abandoned.

7. Ground 22 of the motion complains because the court erred in permitting the witness L. J. Stevens, called for the State, to testify as follows: "Q. Did you ever threaten Os Pitts, while he was in jail, with the electric chair, or any other punishment? A. No, sir. Q. State whether or not any threats were used against this witness, Os Pitts, at any time? A. None whatever at any time that we or anybody else talked with him. Q. I will ask you whether or not any threats were used against him? A. Not in my presence there was not." Movant objected on the ground that the testimony sought to be elicited was wholly irrelevant, immaterial, and prejudicial. Os Pitts had testified: "Shortly after this thing took place they arrested me and about twelve or thirteen more folks; put me in jail in Macon. Several people came to see me there and talked to me about it. They kept hammering at me. They said if I didn't want to go to the electric chair I had better say this and say the other, because [I] knew who it was and everybody in Jones County knew who it was. That is what they told me. I didn't know. They got me so flabbergasted I didn't know what I was saying 'yes' to." We are of the opinion that the evidence objected to here was not inadmissible for the reason assigned, that it was "irrelevant, immaterial, and prejudicial."

8. Ground 24 alleges error on the following: "The witness, Lizzie May Pitts, was asked by the solicitor-general, 'You say, Lizzie May, as you were going down the steps to-day at dinner'— At this point the defendant's counsel interposed an objection on the ground that it sought to elicit testimony that somebody had approached the witness sometime during the day, and that the

same was wholly irrelevant and should not be offered except for the purpose of impeaching the witness.  Immediately upon said objections being made, the court stated in the presence and the hearing of the jury as follows: 'If anybody had tried to intimidate this witness I think it would be proper for the solicitor-general to go into that.  So go ahead, Mr. Solicitor.'"  Movant contends that said statement of the court was erroneous and harmful to movant, because it was an intimation that the solicitor-general was undertaking to prove that the witness had been intimidated; and that the statement of the court necessarily conveyed the impression to the jury that in the court's opinion the witness was not telling the truth on the stand, for the reason that some person personally interested in the defense was undertaking to intimidate her.  This was not an intimation of opinion; the judge put his statement conditionally, and this is not cause for reversal.

9.  Ground 25 assigns error because the court permitted the witness L. J. Stevens to testify to a conversation which occurred prior to the trial, between him and the witness Os Pitts.  Stevens testified that Os Pitts, after talking to him at length about the case, said to Mr. McCommons, "Well, white folks, if I was to tell all I know about this thing, these men would kill me."  Movant contends that said testimony was illegal, irrelevant, and immaterial; and that it was prejudicial to movant, because its effect upon the jury would be that the witness Os Pitts was telling a falsehood on the stand.  The burden is on the defendant to show error, and this ground does not come up to that requirement.

10.  Error is assigned in ground 28 of the motion for new trial (there appears to be no 27th ground), because the court permitted the solicitor-general to read to the jury a written memorandum found on Mr. Malone, one of the deceased, as follows: "Go down on the Garrison road until you come to a negro house just this side of Earnest Ethridge's house on the left-hand side of the road, and follow this road.  Go down the road to Atkinson Ethridge's, and you will find a road turning to the left at Atkinson Ethridge's house, and you will come to a spring situated near an oak tree, and follow this branch, and you will find a still which is Atkinson Ethridge's still."  Movant objected to the reading of the memorandum, on the grounds that it was irrelevant, that there was no proof that the defendant was remotely connected with it,

and no proof whatever of any conspiracy between Atkinson Ethridge and movant. There is no merit in the contention that there was no proof of conspiracy between Atkinson Ethridge and movant. Our Code declares that when, in a legal investigation, conversations, letters and replies, and similar evidence, are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence. Civil Code (1910), § 5763. See *Coggeshall* v. *State,* 161 *Ga.* 259 (10), 268 (131 S. E. 57).

11. Error is assigned in the 29th and 30th grounds, because Os Pitts was allowed, over objection by movant, to testify as follows: "On Sunday morning after the killing on Friday, me and Mr. Atkinson Ethridge went to the place where the still was torn up (referring to the still on Atkinson Ethridge's place, alleged to have been torn up by the deceased officers on August 28, 1925), and carried off the still a little ways down an old pasture away down on the creek. Mr. Earnest Ethridge came that way after he met us in the car. He got on the car and went with us down to this place." This evidence was objected to as irrelevant and prejudicial, and as illustrating no issue in the case, and because it had reference to the act of an alleged co-conspirator after the completion of the alleged illegal enterprise, etc. As we have indicated in the previous divisions of this opinion, there is sufficient evidence in the record to authorize the jury to infer that a conspiracy had been proved prima facie between Atkinson and Grover Ethridge; and it has been held that the acts and conduct of one accomplice during the pendency of the wrongful act, not only in its perpetration but also in its subsequent concealment, are admissible against the other. So also are the sayings pending the common criminal enterprise. *Byrd* v. *State,* 68 *Ga.* 661; *Wall* v. *State,* 153 *Ga.* 309, 317 (112 S. E. 142); *Smith* v. *State,* 148 *Ga.* 332, 338 (96 S. E. 632); *Rawlins* v. *State,* 124 *Ga.* 31 (12), 46 (52 S. E. 1).

12. The 34th ground of the motion assigns error on the following charge of the court: "Now the court charges you, and this is entirely a question for your consideration and your determination, that in the event you are satisfied from the evidence in this case beyond a reasonable doubt that there was a conspiracy, that is an agreement existing between the defendant now upon trial

and Mr. Atkinson Ethridge, to take the life of Mr. Floyd Malone and Mr. Frank Tucker, if there was any such agreement or conspiracy, and that is a question entirely for your consideration, why then in law, during the commission of the offense, if any offense was committed, the acts of one would be chargeable to the other." This charge is excepted to on the grounds that it was not authorized by the evidence, and that the evidence failed to disclose any agreement looking to the execution of the illegal enterprise between movant and Atkinson Ethridge, or any concert of purpose or action of an illegal nature on the part of movant and Atkinson Ethridge. This ground is without merit. As already stated, there is evidence in the record which tends to show a conspiracy between the plaintiff in error and his brother, Atkinson Ethridge. This ruling also disposes of ground 35 of the motion, which complains of the charge on conspiracy, the objection being based upon the ground that it was not authorized by the evidence.

13. Ground 36 of the motion complains of the following charge: "That is, under the laws of Georgia, the court charges you that the law authorizes the conviction of a person on circumstantial evidence if the proven facts are consistent with the guilt and inconsistent with innocence of the defendant beyond a reasonable doubt; and you take that principle of law in connection with the other law that the court has read to you, in passing upon the guilt or innocence of the defendant in this case." It is insisted that this is not a correct statement of the law, and that in effect it puts upon the defendant the burden of showing that the circumstances of the case were consistent with his innocence beyond a reasonable doubt, in order to secure his acquittal, whereas the law places upon the State the burden of affirmatively showing the facts and circumstances to be not only consistent with guilt but inconsistent with any theory of innocence, before a conviction is authorized. Considering this excerpt in connection with the general charge of the court, it did not put the burden of proof upon the defendant of showing that the circumstances of the case were consistent with his innocence beyond a reasonable doubt.

14. Ground 37 of the motion complains that the court erred in failing to charge the jury upon the rules of law governing the defense of alibi, to wit: "Alibi as a defense involves the impossibility of the prisoner's presence at the scene of the homicide at the time

of its commission; and the range of the evidence in respect to time and place must be such as to reasonably exclude the possibility of presence; and that any evidence whatever of alibi should be considered with the rest of the testimony, and if the evidence as a whole should raise a reasonable doubt of the defendant's guilt, the defendant should be acquitted." It is insisted that the evidence adduced upon the trial demanded a charge upon the subject of alibi; that the sole affirmative defense set up by the defendant on the trial was that of alibi; and that it was his right to have the jury instructed by the court as to the rules of law governing that defense. The trial judge in his charge to the jury stated the contentions of the State and of the defendant as follows: "The State contends that on the 28th day of August, 1925, Mr. Floyd Malone and Mr. Frank Tucker were in the employment of the proper officials of this county in the position known as county policemen; and the State contends that on the 28th day of August, 1925, they went to a certain section of this county and destroyed a certain still that the defendant and Atkinson Ethridge had an interest in; and the State contends that on that account the defendant now upon trial and Atkinson Ethridge formed a conspiracy to take the life of Floyd Malone and Frank Tucker; and the State contends in consequence of this conspiracy, on the 28th day of August in the year 1925, in the County of Jones, that the two persons indicted in that bill of indictment, Grover Ethridge and Atkinson Ethridge, acting with a common felonious intent, did inflict wounds upon the person of Floyd Malone and Frank Tucker with a certain gun and pistol; that Floyd Malone and Frank Tucker died from the effect of those wounds; and the State contends that these wounds were inflicted by the defendant now upon trial, in connection with Atkinson Ethridge, under an·agreement to take the life of Floyd Malone and Frank Tucker; and the State contends, under the law and facts of this case, that the defendant now upon trial would be guilty of the offense of murder as charged in the bill of indictment. Now these constitute the material contentions as made by the State in this case. The defendant, on the other hand, contends that he was not in the locality now under investigation on the 28th day of August in the year 1925; and he contends that there was no conspiracy or agreement on his part and Atkinson Ethridge to take the life of Floyd Malone and Frank Tucker; and

he contends that he did not inflict any wounds upon the persons of Floyd Malone and Frank Tucker; and he contends, under the law and facts of this case, that he would not be guilty of the offense charged in the bill of indictment. Now these constitute the material contentions as made by the defendant in this case; and you have been empaneled as twelve upright and impartial jurors to pass upon the contentions as made by the State and the contentions as made by the defendant now upon trial, and apply the law as will be given you in charge by the court to the facts in evidence in order to reach a correct verdict in the case." The evidence in this case did not reasonably exclude the possibility of the presence of the defendant at the scene of the homicide; and therefore it was not error to fail to give in charge the law of alibi. *Mathis* v. *State,* 153 *Ga.* 105 (2) (111 S. E. 567) ; Michie's Digest of Georgia Reports, 316, title "Impossibility of Presence." See *Hardin* v. *State,* 107 *Ga.* 718 (33 S. E. 700).

15. Ground 38 of the motion for new trial assigns error on the following charge of the court: "Now there have been certain affidavits read to some of the witnesses that were testifying in this case on behalf of the State. The court charges you those affidavits were read to the witnesses for one purpose and one purpose alone, and that was to enable them to refresh their recollection; and whatever may have been contained in those affidavits, as the affidavits themselves were not introduced in evidence, it would not be proper for the jury to consider, whatever was stated in these affidavits, unless the witnesses on the stand testified to those facts, if there were any facts that were incorporated in the affidavits." It is insisted that this charge was error : First, because the court therein intimated and expressed an opinion as to what had been testified on the trial of the case; and because the statement of the court that certain witnesses had testified on behalf of the State was tantamount to an expression of opinion that the testimony of these witnesses was favorable to the State, and therefore supported the contentions of the State as to the guilt of the defendant. Second, because said charge erroneously instructed the jury that the statements made in these affidavits should not be considered by the jury unless the witnesses making the affidavits testified to the facts contained therein. It is insisted that under the law the statements contained in these affidavits were not a subject-matter for

the jury's consideration in any event; that whether these statements in the affidavits were repudiated or reaffirmed, they could not properly be considered by the jury for any purpose, the State not claiming to have been entrapped, and the affidavits not being offered for the purpose of impeachment. The charge quoted is not open to the criticisms directed against it.

16. Error is assigned in ground 39 of the motion, because of the following charge of the court to the jury: "Now I charge you part of section 448(oooo), in the 11th volume of Park's Annotated Code, from the act of the legislature that was passed in the year 1917. This law says, 'All apparatus or appliances which are used for the purpose of distilling or manufacturing any of the liquors or beverages specified in this article are hereby declared to be contraband, and no corporation, firm, or individual shall have any property right in or to the same; and when said apparatus or appliances are used, or about to be used, for the purpose of manufacturing, using, holding, or containing any of the liquors or beverages specified in this article, are found or discovered by any sheriff, deputy sheriff, or other executing officer of this State, the same shall be summarily destroyed and rendered useless by him without any formal order of the court.' That is, under the law which I have just read to you, any arresting officer in the State of Georgia has the right to destroy, without any order of court, any apparatus or appliances used or about to be used for the manufacture of alcoholic liquors; and the fact that an officer may have destroyed any apparatus or appliance for the manufacture of alcoholic liquors, that would not give any person any right to inflict any violence upon such officers, because under the laws of the State of Georgia he has the right, as passed by the legislature of the State of Georgia in 1917." The exception to this charge is that there was no evidence adduced upon the trial showing that any still, appliance, or apparatus used for the manufacture of alcoholic liquors, in which the defendant had any interest or with which he had any connection, was ever torn up by the deceased officers; and that it was error extremely prejudicial to the defendant for the court to give the State the benefit of such theory in his charge. The charge complained of was not error for the reason assigned, because there was some evidence tending to show that the defendant had an interest in the still destroyed.

17. A short synopsis of the evidence for the State is set out in the second division of this opinion; and while the evidence for the State was purely circumstantial, we can not say that it did not exclude every reasonable hypothesis save that of the guilt of the accused; and the trial judge being satisfied therewith, and no reversible error of law appearing in the motion for new trial, the court below did not err in overruling the motion and refusing a new trial.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., and ATKINSON, J., who concur in the ruling announced in headnote 1, and subdivision (*a*) of that note, but dissent from the judgment of affirmance.