STATE OF IOWA, Appellee, v. JOHN WAGNER, Appellant.

DECEMBER 14, 1928.

*T. L. Brookhart* and *George B. Baker*, for appellant.

*John Fletcher*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

MORLING, J.—I. The defendant contends that there is no proof of the corpus delicti, and that the evidence is insufficient to sustain conviction. The State's evidence tends to show that the prosecuting witnesses, Frank Day and wife, kept on their home premises a large number of high-grade Plymouth Rock chickens, having peculiar markings. On June 23, 1927, prosecuting witnesses retired about 9 o'clock. The chicken house had been closed. About that time, their dogs made a disturbance, and were called by them to the porch. The next morning, prosecuting witnesses discovered that the doors of the chicken house were open, and the chickens that were left were out in the lot. A number were missing. How many, witnesses did not know. On the morning of the 25th, they found eight of them at Eck's store in Woolson. These eight chickens had been brought to Eck's store by the defendant about 10 o'clock P. M., June 23d, when Eck bought them of defendant. Defendant lived in Rubio, a considerable distance northeast of Woolson and Richland. The sheriff and assistant interviewed defendant, and examined his premises. Defendant gave untrue and different explanations of where he got the chickens. His woodshed, in which he claimed to have kept them for some time, showed no signs of the keeping of chickens there. The sheriff asked defendant "why he didn't sell the chickens in Rubio, in place of going clear down to Woolson with them, and he said he didn't like those fellows there very well. He could have got the same price for them, but didn't like those fellows very well." Eck had seen defendant only once before he bought the chickens. In addition, there is the evidence in behalf of the defendant, to which reference will be made later. We do not set out defendant's explanation. It is not our province to weigh the evidence. There was sufficient evidence of the corpus delicti and of defendant's guilt to go to the jury.

II. Defendant further contends that the court erred in re-

ceiving testimony to the effect that the chickens found by the prosecuting witnesses at Eck's, and taken back by them to their  premises, appeared to be familiar with the chicken house and surroundings, and with the method of feeding and watering there, and with the roosting place; that they did not, when placed with the other chickens, stand apart and act strange, but mingled with the rest. We need not set out the particular facts disclosed in evidence from which these deductions are drawn. Defendant's contention is that the court was in error in admitting "testimony in relation to the action and conduct" of the fowls,—relying on *State v. Grba*, 196 Iowa 241, where it is held that evidence of the trailing and identification of defendant by bloodhounds was not admissible. The basis of the holding is summed up as follows:

"The evidence is in the nature of expert testimony, with no opportunity whatever to cross-examine the expert or to find out from any source any reason for the conduct of the dogs, or why they should choose one direction, or one trail, rather than another, as was done in the instant case."

It is also said:

" * * * the bloodhound may be right in what he does, and he may be wholly wrong. How is it possible to know in any particular case whether he is right or wrong?"

That case does not support appellant's contention here. While, in the case now before us, there is no evidence as to the habits and instincts of chickens, such evidence is not necessary; for their habits and instincts in the respects under consideration here are so well known and matter  of such common observation that the court will take judicial notice of them. 23 Corpus *Juris* 154 *et seq.* See *Parsons v. Manser*, 119 Iowa 88. In the light of such general knowledge, the testimony to the actions and conduct of the chickens, tending to show familiarity with their surroundings and with the practice in places and methods of feeding and watering in use there, and the absence of signs of strangeness, was admissible, as tending to identify the chickens found in defendant's possession that night with

the chickens which had been taken from the prosecuting witnesses' premises. *State v. Ward,* 61 Vt. 153 (17 Atl. 483, 487); 22 Corpus Juris 750; *Folsom v. Concord & M. Railroad,* 68 N. H. 454 (38 Atl. 209).

III. The court charged the jury that reasonable doubt "does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning given to the evidence, or one which is manufactured from sympathy for a defendant, or to excuse the guilt of one of whose guilt there is no reasonable doubt. But it means a doubt which, without being sought after," etc. Defendant argues that the instruction is misleading; that the expressions "manufactured from sympathy for a defendant" and "it does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning," would easily lead the jury to believe that they must manufacture a doubt from sympathy for the defendant, and could not have any reasonable doubt unless they did so. We are of the opinion that defendant's objection to the instruction is untenable. An instruction containing the same language here objected to—though this precise point was not made—was approved in *State v. Krampe,* 161 Iowa 48, 55, followed in *State v. Berry,* 192 Iowa 191, 195. See, also, *State v. Lindsay,* 161 Iowa 39, 44.

IV. The court gave an instruction on the defense of alibi, saying, among other things, as is commonly done in such instructions, that the defense is recognized as one easily manufactured, and that the evidence on it should be examined with care. Defendant contends that the defense of alibi was not raised, and we think in this his position is correct. We think the evidence introduced by him, showing his whereabouts on the evening in question, was incidental to his denial that he was the perpetrator of the offense, and was not offered for the purpose of showing, and did not show, that, by reason of his being elsewhere, it was impossible for him to have taken the chickens at the time and place charged. The evidence is not clear as to the location of Rubio, Richland, and Woolson, but the court takes judicial knowledge of their geographical locations. *Wertheimer & Degen v. Shultice,* 202

Iowa 1140; 23 Corpus Juris 84 *et seq.* To some extent, judicial knowledge may be taken of general distances between such locations. *Helena Adjustment Co. v. Claflin,* 75 Mont. 317 (243 Pac. 1063).

Defendant lives in Rubio, in Washington County. Richland is in Keokuk County, a number of miles southwest of Rubio. Woolson is some distance south of Richland. The prosecutors' premises are about two and one-half miles northwest of Woolson, and about two and one-half miles southwest of Richland. How far from the road leading from Richland to Woolson is not shown. The State's evidence as to the time of the offense is that it was about 9 o'clock, or soon after. Defendant was in possession of the chickens at about 10 o'clock, when he sold them at Woolson to Eck. Defendant's claim is that the chickens that he sold to Eck had been in his possession in Rubio for ten days or two weeks. Defendant's wife testifies that, at about 8 o'clock in the evening of June 23d, she and defendant put the chickens in their car at Rubio, and went together to her sister's, about three quarters of a mile south of Rubio; that she then got out of the car; that defendant stayed there just a few minutes, and then defendant and her sister's husband, Hubbs, "started to Woolson. They returned about 10 o'clock, I think." Hubbs says that defendant, with his wife and children, came to his place in their car about 8 o'clock; that the wife and children stopped there, and he (Hubbs) "went to Richland with Mr. Wagner. It was somewhere in the neighborhood of 8:30 when we started to Richland. I would judge it was somewhere around 9:00 when we got to Richland. * * * I heard some chickens in Mr. Wagner's car * * * When we got to Richland, I stopped there. * * * Mr. Wagner went on. He went south. He returned for me somewheres around an hour later. Somewheres about 10 o'clock. I got in the car, and went back home with Wagner. Mr. Wagner and his family left our home in the neighborhood of 11 o'clock. * * * "

Defendant testifies merely that he was not on the prosecuting witnesses' place on the night of June 23d, and never stole any of their chickens.

The defendant might have left Rubio, arrived at Richland, and left there, at the times stated. In going from Richland to Woolson, he was in an automobile, and within a short distance

of Day's place at the time when the chickens were, according to the State's evidence, probably stolen. If the testimony of defendant's witnesses as to his whereabouts should be accepted as true, it might, nevertheless, be found that he could very readily have been at the Days' place at the time the chickens were stolen. The defense of alibi, in substance, is that, at the time of the commission of the offense, defendant was at another place. We have not seen a satisfactory rationale of the law of alibi, and shall not undertake to formulate one. There are, however, relevant established principles: (1) The burden of proof on the whole case rests upon the State, to prove the defendant guilty beyond reasonable doubt. (2) Where the defendant's presence at the time and place of the commission of the crime is essential to his conviction, the State's evidence necessarily must show his presence at the precise place at the precise time. (3) The defendant may meet the State's case by evidence merely controverting the State's evidence; and incidentally thereto, his evidence may tend to show that he was not present at the time and place charged in the State's evidence, but, as explanatory and corroborative, he was elsewhere. (4) He may go further, and attempt to prove affirmatively, not merely that he was not present, but that, by reason of extraneous facts, it was impossible that he could have been present; resultantly, that the State's evidence identifying him as present and perpetrator is, as to his identification, untrue. (5) This court is committed to the doctrine that the burden of proving this impossibility is upon the defendant. It is said in *State v. Red*, 53 Iowa 69, 70:

"Surely an *alibi* will not be presumed; it must be proved. The burden of proof must rest upon the defendant who seeks to establish it, just as the burden of proving defendant's presence at the place of the crime rests upon the State. Of course, an *alibi* cannot be established except by a preponderance of evidence. No fact can be established by any less evidence. *State v. Northrup*, 48 Iowa 583; *State v. Hardin et al.*, 46 Iowa 623; *State v. Vincent*, 24 Iowa 570. This rule does not abrogate the doctrine of reasonable doubt. A prisoner cannot be convicted upon a preponderance of evidence. There must exist no reasonable doubt of his guilt, based upon the evidence. But there may be a preponderance of evidence against him, and yet a reasonable doubt of his guilt. In such case, the jury may [must] acquit.

This reasonable doubt may be based upon the whole evidence, or upon the evidence establishing certain essential facts necessary to be established, or upon evidence of facts inconsistent with the prisoner's guilt. The doctrine extends to all the evidence and to each part tending to establish independent facts. If, upon consideration of the whole evidence or any part of it, the reasonable doubt arises as to any essential fact, the jury must acquit.''

In *State v. Hardin*, 46 Iowa 623, 629, quoting from *Commonwealth v. Webster*, 5 Cush. (Mass.) 295, 323, the thought is expressed in another way:

'' 'In the ordinary case of an *alibi*, when a party charged with a crime attempts to prove that he was in another place at the time, all the evidence tending to prove that he committed the offense tends in the same degree to prove that he was at the place when it was committed. If, therefore, the proof of the *alibi* does not outweigh the proof that he was at the place when the offense was committed, it is not sufficient.' ''

See, also, *State v. Hamilton*, 57 Iowa 596, and dissenting opinion there; *State v. Worthen*, 124 Iowa 408; 16 Corpus Juris 533, 978 *et seq.*

We are also committed to the doctrine that, where evidence of alibi is introduced, it is proper to charge:

'' 'It is recognized in the law that the defense of *alibi* is one easily manufactured, and jurors are generally and properly advised by the courts to scan the proofs of an *alibi* with care and caution.' '' *State v. Blunt*, 59 Iowa 468, 469.

See, also, *State v. Rowland*, 72 Iowa 327; *State v. Worthen*, 124 Iowa 408, 413; *State v. Bosworth*, 170 Iowa 329; 16 Corpus Juris 976, 979.

Obviously, this instruction should not be given when the defendant is seeking to do no more than controvert merely by way of negation the evidence of the State, when he is not attempting to prove by facts wholly extraneous to the State's evidence that he was not only not present, but that it was impossible that he could have been present,—impossible not merely because he says he was not there, but affirmatively, because he was so situated or circumstanced that he could not have been there. Such extraneous affirmative facts, depending on precise date, time, place, oc-

currences, and conditions at such place and the relation of such occurrences and conditions to the time and place of the commission of the crime (the prosecution without opportunity to investigate), are easily manufactured. If defendant's evidence is not directed to showing such impossibility, then he is not setting up an alibi, and his evidence ought not to be disparaged as an easily manufactured defense. The circumstances and conditions, the facts proved, to constitute an alibi, must have been such that he could not, at the time thereof, have been at the place of the commission of the offense, and therefore could not have been the perpetrator. In some cases, distance is quite a controlling factor. Particularly has this been true in former days of difficult and slow means of transportation. In this case, the defendant was in the actual use of quick means of transportation,—an automobile. Distance is not, however, the controlling factor. This court said, in *State v. Ireland*, 192 Iowa 489, 494:

"The word 'alibi,' as used in this connection, means simply 'elsewhere,' 'at another place.' *Peyton v. State*, 54 Neb. 188 (74 N. W. 597); *State v. Bosworth*, supra. The portion of the instruction quoted makes time and distance controlling elements of the proof offered to sustain this defense. This is error. *Peyton v. State*, supra. The defendant admitted that he was in the city of Des Moines on the night in question, and the evidence shows that Riverview Park could easily have been reached by him in time to have committed the crime. No one contends to the contrary. The claim of the defendant is that he was not at the place of the crime, but that he was at another place, and therefore could not be the guilty party. The comparative remoteness of such other place bears only on the weight and effect to be given the circumstances."

This doctrine was approved in *State v. Debner*, 205 Iowa 25; but the effect of the evidence introduced by defendant in that case, as in *State v. Bird*, 207 Iowa 212, and *State v. Parsons*, 206 Iowa 390, was that he could not have been at the place of the crime at the time of its commission. In *State v. Debner*, the determining factor was that of distance; but it was not there held that distance was the only determining factor, and, as held in *State v. Ireland*, 192 Iowa 489, it is not. See *State v. Williams*, 195 Iowa 785, 800, 801; *State v. Bosworth*, 170 Iowa 329.

232

This is in accord with the rule recognized in other jurisdictions. The doctrine is well expressed in *Harris v. State*, 120 Ga. 167, 171 (47 S. E. 520, 521):

"The matter of distance from the person assaulted or killed is of slight, if any, importance. It is conceivable that a man could be within a very few feet of another, and yet be so placed as to render his guilt of any crime in connection with him a physical impossibility. If this is proved on the trial, he has established an alibi. On the other hand, it is equally conceivable that a homicide or an assault could be committed though a great distance intervened between the person assaulting and the one assaulted."

See, also, *Mosley v. State*, 165 Ga. 290 (140 S. E. 754); *Ethridge v. State*, 163 Ga. 186 (136 S. E. 72); *McDaniel v. United States*, 24 Fed. (2d Ser.) 303; *Sangston v. State*, 172 Ark. 1177 (289 S. W. 478); 16 Corpus Juris 978. As the evidence offered by defendant did not raise the defense of alibi, the instruction complained of gave an erroneous and prejudicial interpretation of the defense. *State v. Lindsay*, 152 Iowa 403; *State v. Bosworth*, 170 Iowa 329; *State v. Ireland*, 172 Iowa 489. —*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, and ALBERT, JJ., concur.