STATE OF IOWA, Appellee, v. DAVE MCATEER, Appellant.

No. 44343.

OCTOBER 24, 1939.

F. E. Northup, for appellant.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, Luther M. Carr, County Attorney, for appellee.

HALE, J.—The information in this case alleges that the defendant, on May 24, 1937, received and concealed a roan cow belonging to Chester Hulin and Charles Hulin. On defendant's plea of not guilty the cause came on for trial on October 13, 1937, and there was a verdict of guilty, and sentence thereon from which defendant appeals to this court. He assigns as error the admission of testimony relative to the actions of the cow on being returned to the home of Hulin—the prosecuting witness—, insufficiency of the evidence to justify submission to the jury, and failure of the court to sustain defendant's motion for directed verdict.

It appears from the evidence that the defendant lived on a farm adjoining that occupied by Chester Hulin, who claims to own the cow in question and who farmed in partnership with his father, Charles Hulin. From the description given by nearly all the witnesses on this point the animal should not be difficult to identify. She had what is called a Roman nose; very long hair in the ears; three of her legs were white to the knee; two marks in an ear; besides other distinctive marks. In addition to the prosecuting witness, several other witnesses testified as to the identity of the cow. According to the State's testimony, sometime early in May, 1937, the animal disappeared from the Hulin place, which is on the Jasper county side of the county line between that county and Marshall county. The sheriff of Jasper county was notified on May 24, 1937, and the sheriff of Marshall county at an earlier date. It is conceded that on June 4, 1937, the cow was hauled in a truck by Guy Bennett from the Dave McAteer farm to the Grinnell sales barn and entered on the books as the property of McAteer and taken into the

sales ring for sale, and was later trucked to the Hulin farm. The evidence shows that when she was put up for sale she was recognized by Chester and Charles Hulin and a neighbor, and the manager was then notified and the animal turned over to the sheriff.

I. Over the objection of the defendant, in response to questions as to the actions of the cow on being unloaded at the Hulin place, various witnesses—including the sheriff, Charles and Chester Hulin, and two others—testified in substance that when taken from the truck the cow went into the barn and directly to the back stanchion, in which she placed her head. She was then driven out to a lot back of the barn. She started south and then turned to the water tank and, without showing any hesitation, went straight to the tank and pushed a heavy swing door which worked on a hinge at the top and must be pushed in that manner to enable an animal to drink. After drinking she went on to a gate and into the pasture. This trap door at the tank, which is entirely closed, is about 4½ feet high by 3 feet wide, of heavy material, and hangs on hinges from the top. Defendant assigns as error the admission of this testimony and cites the cases of State v. Grba, 196 Iowa 241, 194 N. W. 250, and Brott v. State, 70 Neb. 395, 97 N. W. 593, 63 L. R. A. 789.

The Grba case followed the holding in the Nebraska case above-cited, and turned upon the admissibility of testimony as to the actions of a bloodhound in tracing a criminal. The uncertainty of that form of proof, under the facts, seems to have been the controlling reason for the court's holding that it was inadmissible. The opinion states (196 Iowa at page 263, 194 N. W. at page 259) :

"It is conceded by all courts, and must be, from the facts of the case, that the bloodhound is not infallible, that he does make mistakes; and that he does not invariably follow a trail without deflection therefrom, and with absolute certainty."

This case is reviewed in the opinion in State v. Wagner, 207 Iowa 224, 225, 222 N. W. 407, 408, 61 A. L. R. 282, and, in a case similar in many respects to the case at bar, the court says:

"Defendant * * * contends that the court erred in receiv-

ing testimony to the effect that the chickens found by the prosecuting witness at Eck's, and taken back by them to their premises, appeared to be familiar with the chicken house and surroundings, and with the method of feeding and watering there, and with the roosting place; that they did not, when placed with the other chickens, stand apart and act strange, but mingled with the rest. We need not set out the particular facts disclosed in evidence from which these deductions are drawn. Defendant's contention is that the court was in error in admitting 'testimony in relation to the action and conduct' of the fowls,—relying on State v. Grba, 196 Iowa 241 [194 N. W. 250], where it is held that evidence of the trailing and identification of defendant by bloodhounds was not admissible. The basis of the holding is summed up as follows:

" 'The evidence is in the nature of expert testimony, with no opportunity whatever to cross-examine the expert or to find out from any source any reason for the conduct of the dogs, or why they should choose one direction, or one trail, rather than another, as was done in the instant case.'

"It is also said:

" ' * * * the bloodhound may be right in what he does, and he may be wholly wrong. How is it possible to know in any particular case whether he is right or wrong?'

"That case does not support appellant's contention here."

We further quote from the same case:

" * * * their habits and instincts in the respects under consideration here are so well known and matter of such common observation that the court will take judicial notice of them." (Citing 23 C. J. 154, et seq.; Parsons v. Manser, 119 Iowa 88, 93 N. W. 86, 62 L. R. A. 132, 97 Am. St. Rep. 283.) "In the light of such general knowledge, the testimony to the actions and conduct of the chickens, tending to show familiarity with their surroundings and with the practice in places and methods of feeding and watering in use there, and the absence of signs of strangeness, was admissible, as tending to identify the chickens found in defendant's possession * * *." (Citing State v. Ward, 61 Vt. 153, 17 A. 483, 487; 22 C. J. 750; Folsom v. Concord & M. Railroad, 68 N. H. 454, 38 A. 209.)

■ Defendant insists that what he denominates "the homing instinct" is not of common observation. Evidence was admitted to the effect that this animal had been kept, milked, and fed in this stable. We think it is a matter of common knowledge that cattle will return to a place to which they have for a considerable time been accustomed, and that it is characteristic of practically all domestic animals to show familiarity with and seek the places where they have been sheltered and fed. We hold that the evidence was competent and admissible.

■ II. Defendant, in his second assignment of error, urges that upon the whole record there was not sufficient evidence to justify the submission of the cause; and based upon and connected with this assignment are divisions III and IV, which he does not argue but which allege error of the court in failing to sustain defendant's motion for directed verdict. With this contention we cannot agree. Defendant introduced the testimony of himself and of other witnesses to the effect that he was the owner of and had had the cow in his possession for some years. To this was opposed the testimony of various State witnesses. The testimony was in conflict and was properly for the jury. This rule is so well established that there is hardly any necessity for citation of authorities. However, for one of the latest pronouncements of the rule, see State v. Chappell, 226 Iowa 1392, 286 N. W. 432. See, also, State v. Harrington, 220 Iowa 1116, 1123, 264 N. W. 24, and cases cited.

Other objections were made in assignments III and IV to the action of the court in overruling motion for directed verdict and motion for new trial. While these were not argued, we have gone over the record and find no error therein.

The case should be, and it is, affirmed.—Affirmed.

OLIVER, C. J., and HAMILTON, STIGER, SAGER, and MILLER, JJ., concur.